Ernest **KAY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 7599.

United States Court of Appeals Fourth Circuit.

Argued March 5, 1958.

Decided May 17, 1958.

Harlan E. Freeman, Arlington, Va., for appellant.

Henry St. J. FitzGerald, Asst. U. S. Atty., Alexandria, Va. (L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on the brief), for appellee.

Before SOBELOFF and HAYNSWORTH, Circuit Judges, and WILLIAMS, District Judge.

HAYNSWORTH, Circuit Judge.

This is an appeal from a conviction, in the United States District Court for the Eastern District of Virginia, at Alexandria, upon both counts of an information charging the defendant with driving on a Federal parkway, within the territorial limits of Virginia, while under the influence of intoxicants and with reckless driving.

One afternoon, after his work as a truck driver was done, the defendant, his

wife and some friends had several drinks and some food. Afterwards, the defendant undertook to drive himself and his wife from the District of Columbia to their house in Virginia. There was testimony that he was driving erratically as he proceeded across the Fourteenth Street Bridge. Shortly after entering Virginia, while still on the parkway, he was involved in a minor accident. Two United States Park Policemen, investigating the collision, noticed the odor of whiskey on the defendant's breath, and they testified to conduct of the defendant which was indicative of intoxication.

The questions raised on appeal grow out of the receipt in evidence of a report of a chemical analysis of the blood of the defendant and the instructions to the jury regarding it.

The Assimilative Crimes Act of 1948 (18 U.S.C.A. § 13) makes applicable here the Virginia statute which prohibits one from driving an automobile "while under the influence of alcohol * * *." (§ 18–75, Code of Virginia) and the Virginia statute which prescribes penalties for the offense (§ 18–76, Code of Virginia). It was assumed in the Court below, and the defendant has raised no question about it here, that the Assimilative Crimes Act also adopted Chapter 557 of the Acts of the General Assembly of the Commonwealth of Virginia, Regular Session, 1956 (§§ 18–75.1, 18–75.2, 18–75.3). The new § 18–75.1 provides for a chemical analysis of a blood sample taken with the consent of one accused of a violation of § 18–75; new § 18–75.2 directs the receipt in evidence of a certificate showing the result of the analysis, while new § 18–75.3 establishes certain presumptions which arise out of the finding of the alcoholic content of the sample.[1]

1. The relevant sections of the Virginia Code are:

"§ 18–75. Driving automobile, engines, etc., while intoxicated. No person shall drive or operate any automobile or other motor vehicle, car, truck, engine or train while under the influence of alcohol, brandy, rum, whiskey, gin, wine, beer, lager beer, ale, porter, stout or any other liquid beverage or article containing alcohol or while under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature."

"§ 18–75.1. Use of chemical analysis to determine alcohol in blood; procedure; costs; evidence. In any criminal prosecution under § 18–75, or similar ordinance of any county, city or town, no person shall be required to submit to a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis of his blood, breath, or other bodily substance; however, any person arrested for a violation of § 18–75 or similar ordinance of any county, city or town shall be entitled to a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis of his blood or breath, provided the request for such determination is made within two hours of his arrest. Any such person shall, at the time of his arrest, be informed by the arresting authorities of his right to such determination, and if he makes such request, the arresting authorities shall render full assistance in obtaining such determination with reasonable promptness.

"Only a physician, nurse or laboratory technician, shall withdraw blood for the purpose of determining the alcoholic content therein. The blood sample shall be placed in a sealed container provided by the Chief Medical Examiner. Upon completion of taking of the sample, the container must be resealed in the presence of the accused after calling the fact to his attention. The container shall be especially equipped with a sealing device, sealed so as not to allow tampering, labeled and identified showing the person making the test, the name of the accused, the date and time of taking. The sample shall be delivered to the police officer for transporting or mailing to the Chief Medical Examiner. Upon receipt of the blood sample, the office of the Chief Medical Examiner shall examine it for alcoholic content. That office shall execute a certificate which certificate shall indicate the name of the accused, the date, time and by whom the same was received and examined, and a statement that the container seal had not been broken or otherwise tampered with and a statement of the alcoholic content of the sample. The certificate, attached to the container shall be returned to either the police officer making the arrest, the department from which it came, or to the clerk of the court in which the matter will be heard.

The constitutionality of the revised Assimilative Crimes Act in its adoption of subsequently enacted state criminal statutes has recently been sustained. United States v. Sharpnack, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282. The Act, however, does not generally adopt state procedures. Indeed state interpretation of the adopted statutes is not binding upon a federal court,[2] and federal, rather than state, rules of evidence are applicable to all prosecutions under the Act.[3] But, while § 18–75.1 may be said to be largely procedural, it is a preliminary, pre-judicial procedure which may be employed only with the consent of the accused. It is designed for the protection of the accused, to insure the reliability of the report of the test and to protect the validity of the presumptions established by § 18–75.3.

Those presumptions are not merely procedural, for they amount to a redefinition of the offense.

Prior to 1956, the offense of driving "while under the influence o_ alcohol" had not been defined with particularity in the statutes of Virginia. The Supreme Court of Appeals of Virginia held in 1927 that the crime was made out if the driver was under the influence of alcohol to any extent and that it was unnecessary for the Commonwealth to prove that the influence of the alcohol was sufficient to affect his ability to drive with safety. Owens v. Commonwealth, 147 Va. 624, 136 S.E. 765. More recently, the Supreme Court of Appeals of Virginia applied to this offense, and to other statutes proscribing particular conduct when the actor is intoxicated or under the influence of alcohol, the statutory definition of

"Upon the request of the person who was given a chemical test of blood or breath, the results of such test shall be made available to him.

"An amount not to exceed five dollars to cover the costs of taking blood and making an analysis thereof shall be taxed as part of the costs of the case.

"Other than as expressly provided herein, the provisions of this section shall not otherwise limit the introduction of any competent evidence bearing upon any question at issue before the court. The failure of the accused to request such a determination is not evidence and shall not be subject to comment in the trial of the case."

"§ 18–75.2. Report of results of analysis to be filed in Office of Chief Medical Examiner; admissibility of copy of certificate from such office.—When any blood sample taken in accordance with the provisions of § 18–75.1 be forwarded for analysis to the Office of the Chief Medical Examiner, a report of the results of such analysis shall be made and filed in that office. Upon proper identification of such vial. tube or container, the copy of such certificate as provided for in § 18–75.1 shall, when duly attested by the Chief Medical Examiner, be admissible in any court or proceeding as evidence of the facts therein stated and the results of the analysis of the blood of the accused."

"§ 18–75.3. Presumptions from alcoholic content of blood.—In any prosecution for a violation of § 18–75, or any

similar ordinance of any county, city or town, the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of the accused's blood or breath in accordance with the provisions of § 18–75.1, shall give rise to the following presumptions:

"(1) If there was at that time 0.05 per cent or less by weight of alcohol in the accused's blood, it shall be presumed that the accused was not under the influence of alcoholic intoxicants;

"(2) If there was at that time in excess of 0.05 per cent but less than 0.15 per cent by weight of alcohol in the accused's blood, such facts shall not give rise to any presumption that the accused was or was not under the influence of alcoholic intoxicants, but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused;

"(3) If there was at that time 0.15 per cent or more by weight of alcohol in the accused's blood, it shall be presumed that the accused was under the influence of alcoholic intoxicants."

2. Johnson v. Yellow Cab Transit Company, 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814.

3. Rule 26, Federal Rules of Criminal Procedure, 18 U.S.C.A. See also: Wolfle v. U. S., 291 U.S. 7, 54 S.Ct. 279, 78 L. Ed. 617; United States v. Bucur, 7 Cir., 194 F.2d 297; Packineau v. U. S., 8 Cir., 202 F.2d 681; Pollock v. U. S., 5 Cir., 202 F.2d 281.

intoxication contained in § 4–2(14). Under this definition, the effect of the alcohol must be "apparent to observation." Gardner v. Commonwealth, 195 Va. 945, 81 S.E.2d 614, 619; Rodgers v. Commonwealth, 197 Va. 527, 90 S.E.2d 257. The Act of 1956 supplied a new and more objective test and definition for an accused who consents to a blood analysis. The new test is designed to protect an accused whose faculties are not impaired, while withholding protection from one, who, under the sobering influence of an accident or arrest, is able temporarily to avoid the appearance of intoxication. As a new definition of the substantive offense, we conclude that it was adopted by the Assimilative Crimes Act of 1948.

■ The defendant complains that the vial containing the residue of the blood sample and the certificate showing that the alcoholic content of the sample had been determined by chemical analysis to be 0.15 per cent were improperly received in evidence. Since no question was raised as to their proper identification, their receipt in evidence was required by the terms of § 18–75.2, and, in a federal court, the certificate would have been admissible, in any event, under the provisions of 28 U.S.C.A. § 1732, as a writing made, pursuant to statutory requirement, in the regular performance of the official duty of the Chief Medical Examiner of Virginia. One of the obvious purposes of the Act of 1956 was to prescribe a uniform procedure with adequate safeguards and to provide for proof of the result of the analysis without the necessity of producing as a witness every person through whose hands the sample may have passed in the completion of the established routine.

■ The receipt in evidence of the certificate does not foreclose, as the defendant suggests, inquiry into the regularity of the procedure, the freedom of the sample from contamination or the accuracy of the chemical analysis. The questions raised by him as to the qualification of the person taking the sample,[4] the possibility of contamination from the fact that the defendant's arm was wiped with alcohol before the needle was inserted into his vein[5] and the effect, if any, of the presence of a white powder, described as an anti-coagulant, in the vial, are all relevant, and there was no restriction upon the defendant in his effort to develop them. Such questions, however, go to the weight of the evidence rather than to the initial admissibility of the certificate. If the proof established a material failure to follow the procedure required by § 18–75.1, it may be that the certificate should be stricken from the record, but the proof here established no such failure.

■ Admission of the certificate did not deprive the defendant of his right of confrontation by witnesses. Neither the Sixth Amendment to the Constitution of the United States nor Article I, Section 8 of the Constitution of Virginia can be said to have incorporated the rule against hearsay evidence, as understood at the time of their adoption. Each was intended to prevent the trial of criminal cases upon affidavits, not to serve as a rigid and inflexible barrier against the orderly development of reasonable and necessary exceptions to the hearsay rule.

■ The power of the Congress and of a state legislature to provide for the admission of evidence is not subject to any such arbitrary limitation as the defendant supposes. They may carve out a new exception to the hearsay rule, without violating constitutional rights, where there is reasonable necessity for it and where it is supported by an adequate basis for assurance that the evidence has those qualities of reliability and trustworthiness attributed to other evidence

4. There was abundant testimony that the person taking the sample was a Dr. Chao, a member of the staff of the hospital to which the defendant was taken, but the defendant sought to disparage such testimony because of a difference in the recollection of witnesses as to whether Dr. Chao was a man or a woman.

5. See, however, Gradwohl, Legal Medicine, 792–3.

admissible under long established exceptions to the hearsay rule. See Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; United States v. Leathers, 2 Cir., 135 F.2d 507; Matthews v. U. S., 5 Cir., 217 F.2d 409.

Certificates quite comparable to this one have been held admissible over objection upon similar constitutional grounds. See Bracey v. Commonwealth, 119 Va. 867, 89 S.E. 144; State v. Torello, 103 Conn. 511, 131 A. 429; Commonwealth v. Slavski, 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281; Commonwealth v. Stoler, 259 Mass. 109, 156 N.E. 71. The alcoholic content of the blood, the evidentiary fact sought to be proved by the certificate, may be accurately determined by well recognized chemical procedures. It is an objective fact, not a mere expression of opinion, and its proof by introduction of the certificate violates no constitutional right of the defendant.

Finally the defendant complains that the Court informed the jury of the presumptions created by § 18–75.3, asserting, first, that it is a "presumption founded upon a presumption," and, second, if it does more than shift the burden of going forward with evidence, it is a denial of due process of law.

■ If there be evil in founding one presumption upon another where the relation between the evidentiary fact and the ultimate fact sought to be proved is unduly attenuated, there is no such situation here. Indeed, the presumption arises directly from the evidentiary fact, the alcoholic content of the blood, and does not rest upon those preliminary assumptions of regularity which were made when proof of the evidentiary fact was allowed by the receipt in evidence of the certificate. There is no rule that facts proven under exceptions to the hearsay rule, though received in evidence, must be denied all evidentiary value.

■ Nor does consideration by the jury of the statutory presumptions deprive the defendant of any protected right. The presumptions embody the standards determined, after extensive investigation, by the Committee on Tests for Intoxication of the National Safety Council (1940 Report).[6] They have been adopted by many states, and, recently, the Congress enacted similar presumptions for use in prosecutions in the District of Columbia.[7] The adoption of the standards as evidentiary presumptions serves to dispense with the necessity of expert witnesses to interpret the laboratory findings, but there is nothing objectionable in the legislature's adoption of that course when the standards are reasonable and have attained wide acceptance. This is particularly true when the presumptions may be founded only upon analyses of blood samples, a procedure which may be accomplished without the substantial possibility of error which may be inherent in some procedures for the analysis of exhaled breath.

The presumption here is rebuttable. It neither restricts the defendant in the presentation of his defense nor deprives him of the presumption of innocence. Since wide experience has demonstrated the close connection between the presumed fact and the alcoholic content of the blood, there is no constitutional objection to the jury's consideration, with all of the other evidence, of the statutory presumption. Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772; Western & Atlantic Railroad Co. v. Henderson, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884; Hawes v. State of Georgia, 258 U.S. 1, 42 S.Ct. 204, 66 L.Ed. 431; Yee Hem v. U. S., 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Mobile, Jackson & Kansas City Railroad Company v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78; Burnette v. Commonwealth, 194 Va. 785, 75 S.E.2d 482; State v. Childress, 78 Ariz. 1, 247 P.2d 333, 46 A.L.R.2d 1169; Toms v. State, Okl.Cr., 239 P.2d 812.

Affirmed.

---

6. See, generally, 1 Gray, Attorneys' Textbook of Medicine, 3rd Ed., Ch. 59.

7. Public Law 85–338, 85th Congress, S. 969, approved March 4, 1958.