# Richmond

## Ann Russell, Administratrix of the Estate of John Anthony Russell, Deceased v. James Edward Hammond.

January 26, 1959.

Record No. 4859.

Present, All the Justices.

The opinion states the case.

*David B. Kinney* (*Edward R. Johnson*, on brief), for the plaintiff in error.

*James H. Simmonds* (*Howard M. Murphy*; *George C. Towner, Jr.*, on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

This suit was instituted by Ann Russell, Administratrix of the estate of John Anthony Russell, deceased, hereinafter referred to as the plaintiff, to recover damages for the wrongful death of her son, John Anthony Russell, who was walking with his back to traffic on the south side of Columbia Pike in Arlington County, Virginia, when he was struck by an automobile driven by James Edward Hammond, hereinafter referred to as the defendant. The jury returned a verdict for the defendant and the trial court entered judgment thereon. To this judgment we granted a writ of error.

The plaintiff assigns the following errors: (1) The refusal of the trial court to allow the plaintiff to introduce in evidence the certificate of the chief medical examiner relative to the alcoholic content in the defendant's blood pursuant to § 18-75.2, 1956 Cum. Supp., Code of 1950; (2) the refusal of the court to grant plaintiff's instruction No. 8; and (3) the granting of defendant's instructions D and E.

There is no conflict in the material evidence.

On November 22, 1956, at about 9:45 p.m., John Anthony Russell, 13 years of age, was walking with his back to traffic on the south side of Columbia Pike in Arlington County, Virginia. At the point of the impact Columbia Pike is slightly downgrade, about 40 feet wide from curb to curb, and is divided into two east-bound lanes and two west-bound lanes with a three-foot concrete gutter on each side between traffic lanes and the curbs. There is a sidewalk running along the north side of Columbia Pike available for pedestrians. Also, though not paved, there is "plenty of room to walk off the road on the south side of Columbia Pike." The road surface was black top and the weather was dry and clear. The general area was lighted by three street lights, however the accident occurred at the outer edge of the lighted area. The Russell boy was wearing light gray trousers, a black leather jacket, and no hat.

The defendant was traveling east in the right-hand lane of Columbia

Pike and had slowed down for a red traffic light, which turned green as he approached it, and he continued through the intersection. Intending to turn from the right lane into the left lane, he looked momentarily into the rear view mirror and noticed an automobile attempting to pass him on his left. His automobile continued to move in the right traffic lane, and as he cast his eyes back down to the road his car struck young Russell, throwing him approximately 37 feet. The defendant's automobile left no skid marks. When he realized he had hit something he pulled his automobile off the pike into a driveway 153 feet from the point of impact and ran back to the scene of the accident where he found Russell lying in the gutter.

The hood on the defendant's car was dented on the right front, and the front bumper was "shiny" about 18 inches from the right end.

The speed limit was 25 miles per hour. The uncontradicted evidence was that the defendant's automobile was traveling approximately 23½ miles per hour at the time of the impact.

Two policemen arrived on the scene within minutes. They testified that the defendant's eyes were bloodshot; that they detected the odor of alcohol on his breath; that he gave no outward appearance of being under the influence of alcohol; that he walked perfectly normally; that his speech was not thick; that he answered questions intelligently, and that he had been crying, which could have accounted for his bloodshot eyes. A blood alcohol test was made and certificate returned by the chief medical examiner showing 0.10 percent by weight of alcohol in the defendant's blood.

■ The plaintiff contends, in her first assignment of error, that under § 18-75.2, 1956 Cum. Supp., Code of 1950, the certificate issued by the chief medical examiner relative to the blood alcohol test is admissible in evidence in civil cases.

Section 18-75.2,[1] 1956 Cum. Supp., Code of 1950, is one of three

---

[1] "§ *18-75.2. Report of results of analysis to be filed in Office of Chief Medical Examiner; admissibility of copy of certificate from such office.*—When any blood sample taken in accordance with the provisions of § 18-75.1 is forwarded for analysis to the Office of the Chief Medical Examiner, a report of the results of such analysis shall be made and filed in that office. Upon proper identification of such vial, tube or container, the copy of such certificate as provided for in § 18-75.1 shall, when duly attested by the Chief Medical Examiner or any Assistant Chief Medical Examiner, be admissible in any court or proceeding as evidence of the facts therein stated and the results of the analysis of the blood of *the accused.*" (Italics supplied.)

statutes of c. 557, p. 912, of the Acts of Assembly of 1956, as amended by c. 45, p. 48, of the 1956 Ex. Sess. The three statutes, §§ 18-75.1, 18-75.2, and 18-75.3, must be read together since they are related and the last two refer to the blood alcohol test made under § 18-75.1.

Section 18-75.1 is specifically made applicable to "criminal prosecutions under § 18-75 (driving automobile, etc., while intoxicated) or similar ordinance of a county, city, or town," and mentions *the accused* throughout. The same language with respect to *criminal prosecutions* and *the accused* occurs in § 18-75.3, and the very sentence of § 18-75.2 relied upon by the plaintiff refers to analysis of the blood of *the accused*. The intended meaning of the words "in any court or proceeding" found in § 18-75.2 is obvious when such words are read in the context of the sentence in which they occur: thus "* * * the copy of such certificate as provided for in § 18-75.1 shall, when duly attested by the chief medical examiner * * *, be admissible *in any court or proceeding* as evidence of the facts therein stated and the results of the analysis of the blood of *the accused*." (Italics supplied.)

The words "in any court or proceeding," when read in conjunction with the companion §§ 18-75.1 and 18-75.3, clearly refer to "any court or proceeding" dealing with "any criminal prosecution under § 18-75 or similar ordinance of any county, city or town * * *" such as is referred to in § 18-75.1.

Section 18-75.1 also provides that the certificate of the medical examiner "shall be returned to either the police officer making *the arrest*, the department from which it came, or to the clerk of the court in which the matter will be heard." (Italics supplied.) The "clerk of the court" obviously refers to the court where the criminal prosecution, under § 18-75 or similar ordinance, will be heard.

Section 18-75.3 provides for certain presumptions arising out of the analysis made, pursuant to § 18-75.1, of the alcoholic content in the blood of an *accused* in a *criminal prosecution* under § 18-75.

In a civil suit there is no *accused*. Hammond was a *defendant*, not an *accused*, in this trial.

The legislature, by its own enactment, placed the sections in the Code under "Crime and Offenses Generally." Title 18, chap. 4, art. 6. If the legislature had intended the sections to deal with evidence in civil cases it would undoubtedly have placed the statutes

in the Code under "Evidence" (Title 8, chap. 16, Code of 1950) or some other appropriate section.

The certificate of the medical examiner executed under § 18-75.1 is not admissible under § 18-75.2 in a civil case. The ruling of the trial judge was correct.

■ The plaintiff next complains of the court's refusal to grant instruction No. 8 and the granting of defendant's instructions D and E.

Instruction No. 8, offered by the plaintiff, reads as follows:

"The jury is instructed that if they believe the presence of John A. Russell on the right-hand side of Columbia Pike was only a remote cause of his death, and that the negligence of James E. Hammond was the sole proximate cause of the death of John A. Russell, then the jury should find for the Plaintiff."

The decedent was walking within the traveled portion of Columbia Pike with his back to traffic when a sidewalk was available, in violation of Code § 46-247,[2] as amended by Acts of 1950, c. 433, p. 850. He continued to walk in a place of danger in violation of the statute up to the moment of the impact. He could have removed himself from danger at any time prior to the impact. The evidence established that the act of the decedent was more than a condition of the accident—it was the immediate, proximate and efficient cause, and never became remote. See *Anderson* v. *Payne*, 189 Va. 712, 720, 721, 54 S. E. 2d 82, 86; *Craighead* v. *Sellers*, 194 Va. 920, 923, 76 S. E. 2d 212, 214.

Instruction No. 8 was properly refused by the trial court.

■ Instruction D, given on behalf of the defendant, reads as follows:

"You are instructed that the driver of a car about to be overtaken and passed shall give way to the right in favor of the overtaking vehicle; and every automobile is required to be equipped with a rear view mirror; that a motor vehicle shall not be moved from one

---

"[2] *46-247. Pedestrians not to use roadway except when necessary; keeping to left.*—Pedestrians shall not use the roadways or streets, other than the sidewalk thereof, for travel, except when necessary to do so because of the absence of sidewalks, reasonably suitable and passable for their use, in which case, if they walk upon the hard surface, or the main travelled portion of the roadway, they shall keep to the extreme left side or edge thereof, or where the shoulders of the highway are of sufficient width to permit, they may walk on either shoulder thereof." (Title 46 was repealed by Acts of 1958, c. 541, p. 685, and a new title 46.1 was enacted, this section being codified as § 46.1-234, 1958 Cum. Supp., Code 1950.)

lane to another until the driver has first used reasonable care to ascertain that such movement can be made with safety."

The plaintiff objected to the instruction on the ground that it failed to inform the jury of the defendant's duty to the plaintiff's decedent and requested the court to add to the end of the instruction the following language: "to others using the highway, including the plaintiff."

This instruction sets forth three statutory duties imposed upon the operator of a motor vehicle under §§ 46-227, 46-294, and 46-222(2), Code of 1950, as amended, now found in 1958 Cum. Supp., Code of 1950, as §§ 46.1-211, 46.1-289 and 46.1-206. These statutes deal with the duties of an operator of a motor vehicle turning from one lane to another where the movement of another vehicle is involved, and with the requirement of equipping a motor vehicle with a rear view mirror. They do not relate to the duty of the operator of a motor vehicle to a pedestrian. The instruction was in the words of the statutes but it was inappropriate under the evidence. It should not have been given but it does not constitute reversible error. The language requested by the plaintiff to be added to the instruction was not proper. The duty required of the defendant to the plaintiff's decedent was covered in other instructions granted by the court. The jury was fully instructed on the issues of negligence and proximate cause.

Instruction E, given on behalf of the defendant, reads as follows:

"The duty to keep a lookout, referred to in another instruction, is not limited to looking forward, but requires a driver to look in any direction for vehicles, persons or conditions which should affect his driving.

"If you find from the evidence that the Defendant Hammond momentarily looked into his rear view mirror immediately prior to the accident and that in doing so he acted as a reasonably prudent driver would have done in the circumstances, then he was not guilty of negligence in not looking ahead for the period reasonably necessary to look into said mirror."

This instruction is a correct statement of the law. A driver who only looks ahead, oblivious to conditions behind and beside him which should affect his driving, is not keeping a proper lookout. See *Matthews* v. *Hicks*, 197 Va. 112, 116, 87 S. E. 2d 629, 631, 632; *Howe* v. *Phofolos*, 85 N. H. 539, 161 A. 379. The instruction as

granted was carefully limited. It told the jury that: if the defendant *momentarily* looked into his rear view mirror and in doing so acted as a *reasonably prudent driver would have done in the circumstances*, then he is not negligent in not looking ahead for the *period reasonably necessary to look into the mirror*.

For the reasons given, the judgment of the trial court is

*Affirmed.*