## Richmond

LESTER ROBERTSON, JR. V. COMMONWEALTH OF VIRGINIA.

June 15, 1970.

Record Nos. 7229 and 7230.

Present, All the Justices.

*Robert F. Ward,* for plaintiff in error in Record Nos. 7229 and 7230.

*William T. Lehner, Special Counsel (Robert Y. Button, Attorney General; M. Harris Parker, Assistant Attorney General,* on brief, for defendant in error in Record Nos. 7229 and 7230.

HARRISON, J., delivered the opinion of the court.

At the September term, 1968, of the Circuit Court of Pittsylvania County, the grand jury returned indictments against Lester Robertson, Jr. for the rape of two girls, ages 11 and 9. By agreement of the defendant and the Attorney for the Commonwealth, and with the consent of the court, a jury was waived and the cases were heard together on pleas of not guilty.

The trial court found Robertson guilty on each indictment and sentenced him to confinement in the penitentiary for terms of 15 years, the sentences to run consecutively. We granted defendant writs of error to the final judgments.

No good purpose would be served by a detailed recitation of the evidence. The victims of the rape testified fully and with great clarity. The acts occurred on Sunday night, August 4, 1968, at a time when the two girls were visiting in defendant's home. The mother of the two girls and the wife of defendant are sisters and were away on a visit with their father. Upon their return the following morning, the children reported to them what had occurred. Examination of the children, their clothes and the bed in which they slept, revealed evidence which corroborated their accusation.

On Tuesday, August 6, 1968, the mother of the girls took them to Dr. G. V. Thompson, Jr., a practicing physician in the Town of Chatham. Dr. Thompson made an examination of both girls and took "a vaginal swab" from each, which he forwarded to the Roanoke office of the Chief Medical Examiner of Virginia to be tested for the presence of seminal fluid. Both specimens tested positive.

The sole issue before us involves the action of the court below in admitting into evidence the laboratory reports. Counsel for defendant concedes that if the reports are admissible, the evidence is sufficient to sustain a conviction of defendant on both indictments.

Dr. Thompson testified as to the manner in which he took a specimen from each child and the precautions taken to insure that the specimens reached the State Health Department Laboratory in proper condition. The laboratory reports, dated August 8, 1968, from the specimens submitted, were signed by Dr. Walter G. Gable, Deputy Chief Medical Examiner, and returned to Dr. Thompson. The identities of the persons from whom the specimens were taken (the two girls) are shown. They likewise show that the material submitted by Dr. Thompson for examination and report was "vaginal swab for acid phosphatase", and that they were received August 7, 1968. The results of the tests were shown thereon as follows: "RESULTS: Swab positive for seminal fluid (acid phosphatase)."

The trial court admitted attested copies of the laboratory reports, relying upon Code § 19.1-45. Defendant excepted, observing that this code section "deals with receiving copies in lieu of originals but does not make any provision for introduction of either copy or original whereby defendant is deprived of his right of cross-examination".

While Chapter 3 of Title 19, Code §§ 19.1-33 through 19.1-46, is entitled "Post-Mortem Examinations", it is manifest that it encompasses more.

Code § 19.1-36 provides for the establishment by the State Health

Commissioner, under the supervision of the Chief Medical Examiner, of a central office and a laboratory, and such district offices and laboratories as are deemed necessary. It provides for adequate professional and technical personnel and physical facilities "for the conduct of post-mortem examinations *and of such pathological, bacteriological and toxicological investigations as may be necessary or proper.*" (Italics supplied.)

It is clear that under the broad powers vested in the State Health Commissioner and the Chief Medical Examiner, the latter and his deputies are assigned the duty of conducting pathological, bacteriological and toxicological investigations separate and apart from, or together and in conjunction with, post-mortem examinations.

Code § 19.1-45 is as follows:

*"Reports of investigations made by the Chief Medical Examiner or his assistants or by medical examiners,* and the records and reports of autopsies made under the authority of this chapter, *shall be received as evidence in any court or other proceeding,* and copies of records, photographs, laboratory findings and records in the office of the Chief Medical Examiner or any medical examiner, when duly attested by the Chief Medical Examiner or one of his Assistant Chief Medical Examiners, or the medical examiner in whose office the same are, shall be received as evidence in any court or other proceeding for any purpose for which the original could be received without any proof of the official character or the person whose name is signed thereto." (Italics supplied.)

The laboratory investigation of the specimens from the two girls involved a pathological investigation by the Deputy Chief Medical Examiner. His authority to conduct the investigation is found in Code § 19.1-36. His report and findings, by virtue of Code § 19.1-45, shall be received in evidence in any court. A duly attested copy of the report shall be received for any purpose for which the original could be received.

The purpose of the statute is primarily to obviate the necessity of summoning as witnesses those physicians or technicians who, in their official capacity, are required to make pathological, baateriological and toxicological investigations, as well as post-mortem examinations. Such a provision is not only expedient and convenient—it prevents the delay that would result if the limited number of

physicians, chemists and technicians were forced to testify whenever a report made by them was offered in evidence.

The admission of a laboratory report in evidence violates no constitutional right of a defendant. The right to be confronted with one's accusers and witnesses does not operate to exclude proper documentary evidence. In *Bracy* v. *Commonwealth*, 119 Va. 867, 869, 870, 89 S. E. 144, 145 (1916), we said:

"We are further of opinion that the court did not err in admitting as evidence the certificate of the State chemist, showing an analysis of the beverage sold by the plaintiff in error. The ground of objection to this action of the court is that it violates section 8 of the Constitution, which provides that, 'in all criminal prosecutions a man hath the right to be confronted with the accusers and witnesses.'

"Section 24 of the Byrd law (Acts, 1906, p. 411) provides that the certificate in question, 'when signed and sworn to by the State chemist, shall be evidence in all prosecutions under the revenue laws of this State.'

"In *Runde* v. *Commonwealth*, 108 Va. 873, 61 S. E. 792, this court says: 'The provision of the bill of rights, guaranteeing the right of the accused in all criminal prosecutions to be confronted with the accusers and witnesses, has never been interpreted to exclude proper documentary evidence;' citing Bishop on Criminal Procedure (3d ed.), secs. 1132-1134. In that case we held that section 34 of the Byrd law, in providing that the list of persons holding United States internal revenue tax receipts, when certified to by the internal revenue officer having charge of the same, should be deemed legal evidence in the courts of this Commonwealth, did not violate the provision of the bill of rights relied on.

"There is no valid distinction between the present case and the *Runde Case*, so far as the admissibility of the certificate, as proper documentary evidence, is concerned. The authorities show that where there is statutory authority for making a certificate by a public officer of acts which are within the scope of his duty as an officer, such a certificate is receivable under the documentary evidence rule as an exception to the hearsay rule. [Citing cases.]"

In *Kay* v. *U. S.*, 255 F. 2d 476 (4th Cir. 1958), *cert. den.*, 358 U. S. 825, 79 S. Ct. 42, 3 L. ed. 2d 65, the defendant argued that he was denied his constitutional right of confrontation when the report

of a state chemist was admitted without the chemist being present for testimony or cross-examination. He further contended that he was entitled to raise questions as to the qualifications of the chemist and as to the accuracy of the test. The court held that the certificate was properly admitted, and in answering the question of defendant's right to question the chemist as to procedure and accuracy, Judge Haynsworth said: "Such questions, however, go to the weight of the evidence rather than to the initial admissibility of the certificate." See also *State* v. *Reddick*, 53 N. J. 66, 248 A. 2d 425 (1968); Wigmore on Evidence, Vol. 5, § 1420, *et seq*. and 1633 *et seq*. (3d ed. 1940).

We have had occasion to construe other statutes providing for the admission of certain reports or documents as competent evidence of the facts therein recited. They have uniformly received the sanction of the court. Mr. Justice I'Anson considered Code § 32-353.27 in *Bailey, Adm'x*. v. *Hunter, Inc.*, 207 Va. 123, 125, 148 S. E. 2d 826, 828 (1966), where it was said:

"Code § 32-353.27 (b) provides in part as follows:

" 'A certified copy of a certificate or any part thereof, issued in accordance with subsection (a), shall be considered for all purposes the same as the original, and shall be *prima facie evidence of the facts therein stated\*\*\**.' (Emphasis supplied.)

"Unquestionably the statute makes a certified copy of a death certificate issued by the State registrar of the Bureau of Vital Statistics *prima facie* evidence of the facts stated therein. However, the language of the statute means that only *facts* contained in the certificate are accorded the dignity of *prima facie* evidence. The statute does not provide that a mere opinion or conclusion, expressed by a person signing the certificate who has no personal knowledge of the facts, shall be *prima facie* proof of the *facts* to be determined. *Life Ins. Co. of Virginia* v. *Brockman*, 173 Va. 86, 92, 3 S. E. 2d 480, 482." [Citing numerous cases.]

Code § 18.1-55.1 contains provisions which regulate the use of chemical tests to determine alcohol in the blood of a person involved in operating a vehicle under the influence of alcohol. Sub-section (f) specifically provides that upon certain conditions a certificate, showing the results of a blood sample analysis made in the office of the Chief Medical Examiner, shall be admissible in any court, in

any criminal proceeding, as evidence of the facts therein stated and of the results of such analysis.

Our attention has been directed to *Brooks, Adm'r*. v. *Hufham*, 200 Va. 488, 106 S. E. 2d 631 (1959), where we considered the admissibility of a certificate of an analysis of blood made by the State Medical Examiner, and held that its receipt in evidence was prejudicial error. Found in the opinion is the following language:

> "Upon the authority and for the reasons stated in *Ann Russell, Administratrix* v. *James Edward Hammond*, 200 Va. 600, 106 S. E. 2d 626, this day decided, we hold that the certificate showing the alcoholic content of Pierce's blood was inadmissible under § 18-75.2, 1956 Cum. Supp., Code 1950. Nor was it admissible under § 19-26, Code 1950, dealing with post mortem examinations, and its receipt in evidence was prejudicial error." 200 Va. at p. 493, 106 S. E. 2d at p. 635.

*Russell, Administratrix* v. *Hammond, supra,* was an automobile accident case. There Mr. Justice I'Anson made a detailed analysis of Code § 18.1-55.1, and we held specifically that the certificate of the medical examiner executed under then § 18-75.1 (presently Code § 18.1-55.1, 1960 Repl. Vol.) is not admissible in a civil case.

Both *Brooks* and *Russell, Administratrix* were civil cases, and the certificate of the medical examiner was held inadmissible in each case. Furthermore, it appears that in each case the certificate was offered under Code § 18-75.1 and not under the provisions of Code § 19-26.

However, to the extent that the statement in *Brooks, Adm'r* v. *Hufham, supra,* to wit, "[n]or was it admissible under § 19-26, Code 1950, dealing with post mortem examinations . . ." might be construed as proscribing the admissibility in evidence of reports of investigations made by the Chief Medical Examiner or his assistants in accordance with the provisions of § 19.1-45 of the Code of Virginia, 1960 Repl. Vol., the case is overruled.

We construe Code § 19.1-45 as providing that reports of investigations made by the Chief Medical Examiner or his assistants or by medical examiners, as well as the records and reports of autopsies, shall be prima facie evidence of the facts stated therein in any court or other proceeding; and that copies of such reports of investigations, and copies of the records and reports of autopsies, duly attested, shall be received in evidence for any purpose for which the original could be received, without any proof of the official character or the

person whose name is signed thereto. The language of the statute means that only facts contained in the certificate are accorded the dignity of prima facie evidence.

The certificates of the Deputy Medical Examiner in the instant cases contain no opinion. They set forth the fact that the vaginal swabs submitted to the office of the Medical Examiner by Dr. Thompson were tested with the result and finding that each was positive for seminal fluid. The laboratory reports were introduced to show this fact and for this purpose only. The reports were properly admitted in evidence and they, together with the other evidence in the case, amply support the convictions of the defendant.

The judgments of the trial court are

*Affirmed.*