**UNITED STATES of America**

**v.**

**Shelbourne W. GHOLSON.**

**Crim. No. 34–70–NN.**

United States District Court,
E. D. Virginia,
Newport News Division.

Nov. 27, 1970.

Anderson B. Smith, Jr., Williamsburg, Va., for plaintiff.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

The defendant appeals from a judgment of the United States Magistrate entered on May 5, 1970, wherein he was found guilty of driving under the influence of alcohol in violation of the provisions of 18 U.S.C.A. section 13, and section 18.1–54 of the Code of Virginia. The defendant was fined $200.00 and his license was suspended for one year.

Shortly after midnight on April 4, 1970, Corporal Billy W. Barker observed the defendant driving his car in a "weaving" manner along a street at Fort Eustis, Virginia, a military reservation owned and controlled by the United States. As the defendant approached a crosswalk near the main Post Exchange, he put on a signal light and turned into a ditch. Having seen this, Barker stopped the truck that he was in, told the defendant to stay in his car, and called the military police to the scene of the accident. In response to Barker's call, SP/4 Hensley A. Walters, an M.P., went to the scene of the accident and found a 1960 Chevrolet station wagon bent up and stuck in a ditch across from the PX. He approached Gholson, who was standing outside of this car which was still running, and requested to see Gholson's driver's license, identification, and car registration. After reading Gholson his rights under U.C.M.J., article 31 (*Miranda* warnings), Gholson stated that he did not want a lawyer. Gholson was then taken to the Provost Marshal's Office and cited for drunken driving. At the Provost Marshal's Office, when asked if he wanted a blood alcohol test taken, Gholson refused. Nothing more was said about a blood test. It may be noted at this point that Gholson was prosecuted only for drunken driving (Code of Virginia, section 18.1–54) and not for his refusal to take the blood test (Code of Virginia, section 18.1–55.1).

At the trial, Barker testified that the defendant was the man who was driving the car. Gholson himself admitted this fact, both to the arresting officer after his rights were read to him and in court. In explaining how the accident happened, Gholson testified that he was on his way to the Operator's Club on Fort Eustis when, in thinking the crosswalk was a street, he turned left and wound up in the ditch. He said that he realized too late that he had made a mistake.

The record of this case is replete with evidence showing that Gholson was intoxicated when he was apprehended. Barker testified that Gholson was driving in a "weaving" manner. SP/4 Walters testified that Gholson was "so highly intoxicated that we would have to tell him to sit down before he falls down." He also testified that Gholson was "staggering" and could hardly walk; that he could detect the odor of alcohol; and that Gholson used some vulgar language when told to sit down in the Provost Marshal's Office. A Mr. Batt, SP/4 Walters' partner on patrol, also tes-

tified and said that Gholson was staggering, speaking incoherently, and could not remember his own telephone number. Batt concluded that in his opinion Gholson had been drinking "in view of the odor." Even the defendant admitted in court that prior to the accident he had had a "few drinks."

In finding Gholson guilty of driving under the influence, the Magistrate cited two statutes: (1) 18 U.S.C.A. section 13, and (2) section 18.1–54, Code of Virginia.

18 U.S.C.A. section 13, provides in part:

"Whoever within or upon any of the places now existing * * * as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State * * * in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

Section 18.1–54, Code of Virginia, provides in part:

"It shall be unlawful for any person to drive or operate any automobile * * * while under the influence of alcohol * * *"

The defendant contends that Code of Virginia, section 18.1–55.1 is also applicable to this case. That statute provides in part (c):

"If a person after being arrested for a violation of section 18.1–54 * * * and after having been advised by the arresting officer that a person who operates a motor vehicle upon a public highway in this State shall be deemed thereby, as a condition of such operation, to have consented to have a sample of his blood taken for a chemical test to determine the alcoholic content thereof, and that the unreasonable refusal to do so constitutes grounds for the revocation of the privilege of operating a motor vehicle upon the highways of this State, then refuses to permit the taking of a sample of his blood for such tests, the arresting officer shall take the person arrested before a committing magistrate and if he does again so refuse after having been further advised by such magistrate of the law requiring a blood test to be taken and the penalty for refusal, * * * then no blood sample shall be taken * * *"

The pertinent issue raised by the defendant is whether, in a prosecution under the Assimilative Crimes Act for drunken driving on a military post in Virginia, the Magistrate must consider both the Virginia statutes, section 18.1–54 and section 18.1–55.1 together, or may he consider section 18.1–54 as a separate offense and disregard any evidence as to blood tests with respect to a drunken driving charge?

The defendant contends that Code of Virginia, section 18.1–55.1 is intricately tied in with section 18.1–54 and, in fact, defines the procedure to be followed after an arrest for violation of section 18.1–54. The very wording of section 18.1–55.1, however, does not support the defendant's contention. Section 18.1–55.1, also known as the "implied consent" statute of Virginia, in essence provides that a person who uses the highways of Virginia *may*, when arrested for drunken driving under section 18.1–54, *be required* to take a blood test. If the driver unreasonably refuses to do so, then he shall be taken before a committing magistrate and if he refuses again, no blood test will be taken and his license may be suspended. There is no mandatory requirement that a driver *must* be given a blood test when arrested for drunken driving. If, however, a driver unreasonably refuses to consent to a blood test when picked up on a drunken driving charge, he may be civilly liable and his license may be suspended for the unreasonable refusal.

It may be noted that under section 18.1–55;[1] which was repealed in 1964, the plain wording of the statute did give the driver the right to have a blood sample taken if requested within two hours of the arrest.[2] This statute (formerly section 18–75.1), however, did not require the driver to take a blood test and did not provide any sanction or penalty for his refusal to submit to a blood test. Thus, it appears that when section 18.1–55 was repealed in 1964 and section 18.1–55.1 was enacted, the concept of the law changed from one where a driver could request the test and it would be given, to one where, if arrested under the drunk driving statute (section 18.1–54), he may be asked to consent to taking the test and for an unreasonable refusal, the penalty of a suspended license would be imposed. Under neither section 18.1–55 (old law) nor section 18.1–55.1 (present law) does it appear that a person arrested for driving under the influence has the automatic right to a blood test. Under the former law, the driver had to request the test seasonably to get it. Under the present law, the driver must submit to the blood test if requested by the arresting officer, and an unreasonable refusal to do so will result in his license being suspended.[3]

Not only is there no mandatory requirement now that the blood test be given in all cases of drunken driving, but there appears never to have been such a requirement, unless the driver seasonably requested it under the old law. This is further borne out by subsection (i) of section 18.1–55.1 which provides in part:

"In any trial for violation of § 18.1–54 * * * this section shall not otherwise limit the introduction of any relevant evidence bearing upon any question at issue before the court, and the court shall, regardless of the result of the blood test or tests, *if any*, consider such *other relevant evidence* of the *condition* of the accused as shall be admissible in evidence * * *" (emphasis added)

Therefore, it appears that the "implied consent" statute (section 18.1–55.1) and the drunken driving statute (section 18.1–54) are not so intricately related as the defendant contends, but rather completely separate offenses with separate penalties. Even though section 18.1–55.1 provides a procedure for determining the alcoholic content of blood of one arrested for drunken driving, it is clear that this is one, but not the only

---

1. Section 18.1–55, Code of Virginia, provided in part:
   "In any criminal prosecution under § 18.1–54 * * * no person shall be required to submit to a determination of the amount of alcohol in his blood at the time of the alleged offense * * * however, any person arrested for a violation of § 18.1–54 * * * if within two hours of the time of the alleged offense, shall be entitled to a determination of the amount of alcohol in his blood * * * provided the request for such determination is made within such time."

2. See Walton v. City of Roanoke, 204 Va. 678, 133 S.E.2d 315 (1963).

3. As we have discussed before, section 18–75.1 became section 18.1–55, and under both of these statutes a defendant was entitled to a blood test if he requested it within two hours of his arrest. In 1964, however, when section 18.1–55 was changed to section 18.1–55.1, the portion

of the statute entitling the defendant to the test if he seasonably requested same was eliminated. It is interesting to note, however, that even under the old law which so entitled the defendant, the Supreme Court of Appeals of Virginia held in Caldwell v. Commonwealth, 205 Va. 277, 136 S.E.2d 798 (1964), at 801 and 802:
   "There is no provision in the statute which expressly requires that the arresting officer advise the accused of his rights to request a test within a two-hour period; to have, if practicable, a physician of his own choice to extract his blood, or to know the results of the test. These provisions are available to an accused but are merely directory, not mandatory, insofar as they apply to the arresting officer. We conclude that the failure of the trooper to inform defendant of the provisions of the statute complained of did not constitute a lack of compliance."

one, procedure for determining intoxication. In fact, the Code of Virginia, section 4-2(14) provides for another test. That statute defines "intoxication" as:

"Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated."

██ This definition has been applied in drunken driving cases in Virginia. One such case was Rodgers v. Commonwealth, 197 Va. 527, 90 S.E.2d 257 (1955). In that case, Rodgers was convicted for driving a motor vehicle in violation of section 18-75 (now 18.1-54). The evidence showed that Rodgers was driving a car on Highway 11 near Dublin, Virginia, on December 2, 1953, and was involved in an accident. A Dublin police officer who went to the scene of the accident found the driver "wobbly" and "staggering" with an odor of alcohol on his breath. A state trooper was called and came to the scene of the accident. He placed the driver under arrest, and while being taken to Pulaski, Virginia, the driver demanded a blood test. Accordingly, the driver was taken to the hospital in Pulaski and given a blood test. At the trial, the driver objected to the use of the blood test as evidence because he contended that the blood was not properly identified. Although the Supreme Court of Appeals of Virginia held that it was reversible error to admit the blood sample into evidence because it was not established beyond a reasonable doubt that the blood taken was the blood of the driver, it said that on retrial the definition set out in section 4-2(14) should be used to determine whether or not the driver was intoxicated. Thus, in Rodgers, even where a blood sample was taken but was invalid because not sufficiently identified, the defendant could be retried for drunken driving under the definition set forth in section 4-2(14). It therefore seems clear that, under the Virginia law, to support a conviction for drunk driving it is not necessary to take a blood test.[4]

Applying the facts in our case to the statutory definition of intoxication, there is no doubt that the evidence fully supports the Magistrate's finding. Not only did the facts support the criteria of the statute, but Gholson himself testified that he had been drinking prior to the accident.

It may be noted here that the defendant's contention at the trial that section 18.1-54 and section 18.1-55.1 should be read together by virtue of the decision of Russell v. Hammond, 200 Va. 600, 106 S.E.2d 626 (1959) has no merit. That case held that the three statutes, section 18-75.1, section 18-75.2, and section 18-75.3 should be read together. With this we must agree because these three statutes all relate to the blood test. The derivatives of these three statutes are now section 18.1-55.1, section 18.1-56.1, and section 18.1-57. Section 18.1-54 (formerly section 18-75), however, is a separate statute and is not cited in Russell v. Hammond, supra, as being read together with the aforementioned blood test statutes.

In addition to relying on the case law that has evolved in Virginia on this point and the plain wording of the statutes, we also feel that the result which we reach here is the only practical one in light of the day-to-day situations that arise. A hypothetical case may well be the driver who is so drunk that he pass-

4. Other Virginia cases using this test in the criminal context are Dickerson v. Town of Christiansburg, 201 Va. 342, 111 S.E. 2d 292 (1959), and Gardner v. Commonwealth, 195 Va. 945, 81 S.E.2d 614 (1954). Virginia also adopts this test in civil cases. See Oliphant v. Snyder, 206 Va. 932, 147 S.E.2d 122 (1966). See also Hill v. Lee, 209 Va. 569, 166 S.E. 2d 274 (1969) where Chief Justice Eggleston said at 276 that "we have held that the odor of alcohol on a person's breath coupled with other circumstances, such as those indicated in the language of the statute (Code § 4-2[14]) will be sufficient to support a finding of intoxication."

es out shortly after being stopped by an arresting officer, and cannot be revived sufficiently to be advised of the "implied consent" statute, much less be taken before a committing magistrate to have his rights explained more fully to him in the event he might want to refuse to have his blood sample taken. Assume that his driving was very erratic and reckless, that there was an odor of alcohol about him, and that before he passed out he was speaking incoherently. Also assume that this man does not regain consciousness until the next day at which time any blood sample taken would, of course, be a nullity under section 18.1–55.1. If, as the appellant suggests in our case, the man could not be prosecuted for driving under the influence under section 18.1–54 and section 4–2(14) because the provisions of section 18.1–55.1 were not (and could not be) followed, we would be faced with the anomalous situation where a man unconsciously drunk would be in a better position than the man who was aware enough to consent to the test but too drunk to pass it. Obviously, no legislature could intend such a result, and it may well be that subsection (i) of section 18.1–55.1, hereinbefore cited, was aimed at precluding just such a situation.

Finally, we feel that our decision here is entirely consistent with Kay v. United States, 255 F.2d 476 (4 Cir., 1958). In *Kay*, the defendant was arrested after a collision on a federal parkway within the territorial limits of Virginia and was prosecuted in federal court for drunken driving under the Virginia statute, section 18–75 (now section 18.1–54) by virtue of the Assimilative Crimes Act. A blood sample of the defendant was taken and was introduced at trial. The defendant, however, objected to the admission of the certificate showing the alcoholic content of the blood as prescribed by section 18–75.2 contending that it violated his constitutional right to confrontation of witnesses. In holding that

the certificate was admissible as an exception to the hearsay rule and in affirming the conviction rendered by the District Court, Judge Haynsworth discussed Virginia statutes, section 18–75 (drunken driving) and section 18–75.1 (implied consent). Although he noted that section 18–75.1 was "largely procedural" and that federal courts are not bound by state interpretation of statutes adopted under the Assimilative Crimes Act, he also indicated that as compared with the statutory definitional test of intoxication set out in section 4–2(14), the blood test was "a new and more objective test and definition for an accused *who consents* to a blood analysis," and "[a]s a new definition of the substantive offense, we conclude that it was adopted by the Assimilative Crimes Act of 1948." [5]

Analyzing the *Kay* decision in light of the facts of our case, it must be remembered that in *Kay* the blood test was given and the question was the validity of the procedure; whereas, in our case the blood test was not given and the question is whether, after having been offered and refusing the blood test —but not having been taken before the Magistrate to have his rights more fully explained to him as to the consequences of the unreasonable refusal; i. e., losing his license—the defendant could then be prosecuted for drunken driving in federal court. In *Kay*, where the blood test was given under statutory procedure, the United States Court of Appeals for the Fourth Circuit adopted that procedure as a definition of the crime under the Assimilative Crimes Act. In our case, however, where no test is given, we are faced with a different question of how the crime may then be defined. Since it has been held that the blood test has been adopted as a definition of the crime where the blood test is consented to and given, it would follow that section 4–2(14), which has been used by the courts of Virginia in defining intoxication where no blood test is given, should

5. Kay v. United States, 255 F.2d 476, 480 (4 Cir., 1958).

also be adopted under the Assimilative Crimes Act as a definition of the offense where there is no test. At this point it may be important to emphasize that when *Kay* was decided, section 18–75.1 said that the defendant was "entitled" to the blood test if it was requested within two hours. As of 1964, however, the word "entitled" has been deleted from the statute.

One further point for consideration is that on the defendant's brief on appeal, he contends that the military police had no authority to make an arrest. The short answer to this contention is that nothing at all was said about this in the trial record and, barring a question of jurisdiction, the general rule is that an appellate court should not give consideration to issues which are not raised below. United States v. Tyrrell, 329 F.2d 341 (7 Cir., 1964).

The judgment of conviction is affirmed.