**Charles KRECK, Plaintiff-Appellee,**

v.

**James SPALDING, Defendant-Appellant.**

**No. 81–3106.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1981.

Decided Dec. 13, 1983.

Victor J. Felice, Mark Vovos, Vovos, Voermans & Murphy, Spokane, Wash., for plaintiff-appellee.

LeRoy C. Kinnie, Chief Deputy Pros. Atty., Spokane, Wash., for defendant-appellant.

Before SCHROEDER and ALARCON, Circuit Judges, and HATFIELD,* District Judge.

HATFIELD, District Judge.

Appellant seeks reversal of the judgment of the District Court for the Eastern District of Washington granting the appellee a Writ of Habeas Corpus and vacating the conviction of the appellee for second degree felony murder. The appellant, State of Washington (hereinafter the "State"), raises on appeal the issues of (1) whether or not the information by which the appellee was charged is sufficient to sustain the appellee's conviction for second degree felony murder, and (2) whether the failure of the appellee to attack the sufficiency of the information prior to trial barred federal habeas relief.

## FACTUAL BACKGROUND

Appellee, Charles Kreck, was convicted of second degree felony murder after a non-jury trial in Superior Court for Spokane County, Washington. The Washington Court of Appeals reversed the conviction.[1] On petition of the State, the Washington Supreme Court reversed the decision of the Court of Appeals, affirming the trial court's decision. *State v. Kreck*, 86 Wash.2d 112, 542 P.2d 782 (1975).

Kreck filed a petition for collateral review with the Washington Court of Appeals, which was denied on August 12, 1977.

In September of 1977, Kreck filed a petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Eastern District of Washington. Having concluded that Kreck had exhausted the remedies available to him under Washington law, the District Court appropriately reviewed the merits of the petition. On July 30, 1980, the District Court granted Kreck's petition, by vacating the judgment of the trial court, upon the

---

* Honorable Paul G. Hatfield, United States District Judge, District of Montana, sitting by designation.

1. The Washington Court of Appeals reversed on the ground that the defendant's constitutional right to confront the witnesses against him under the sixth amendment to the United States Constitution had been violated. *State v. Kreck*, 12 Wash.App. 748, 532 P.2d 285 (1975).

ground that the information with which Kreck was initially charged was constitutionally defective.[2]

The conviction of Kreck was based on the felony murder statute of the State of Washington under which a person may be found guilty of murder in the second degree if, while he is engaged in a felony, he kills another human being.[3] Under Washington law, second degree assault is a felony. Section 9.01.020 Revised Code of Washington (hereinafter "RCW"). Thus, a killing in the course of the commission of a second degree assault can serve as the basis for a second degree felony murder conviction. The second degree assault statute, in turn, sets forth seven situations in which conduct by a defendant constitutes second degree assault.[4]

Kreck, in his petition for Writ of Habeas Corpus before the federal district court, contended that the information filed by the State failed to specifically set forth which subsection of the second degree assault statute he violated.[5] Kreck contended this failure deprived him of due process of law.

The State countered by contending that the inclusion of the term "chloroform" in

---

**2.** The petition asserted three grounds:
  1. The information did not adequately inform the petitioner of the charge, thus depriving him of due process of law.
  2. The admission of a laboratory report blocked the defendant's statutory and constitutional right of confrontation.
  3. The felony murder statute of the State of Washington which allows the utilization of second degree assault as the underlying felony in a second degree felony murder is unconstitutional.

**3.** It should be noted that the Washington legislature adopted a new criminal code, effective July 1, 1976. 1975 Wash.Laws §§ 9A.04.010 *et seq.* That code is codified in Title 9A of the Revised Code of Washington. All references in this opinion, however, are to the code in effect and therefore applicable to Kreck's trial in 1973. The felony murder statute in effect in 1973 provided *inter alia:*

RCW § 9.48.040 MURDER IN THE SECOND DEGREE. The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—
(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or
(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW § 9.48.030.
Murder in the second degree shall be punished by imprisonment in the state penitentiary for not less than ten years.

**4.** RCW § 9.11.020 ASSAULT IN THE SECOND DEGREE. How punished. Every person who, under circumstances not amounting to assault in the first degree—
(1) With intent to injure, shall unlawfully administer to or cause to be taken by another, poison or any other destructive or noxious thing, or any drug or medicine the use of which is dangerous to life or health; or

(2) With intent thereby to enable or assist himself or any other person to commit any crime, shall administer to, or cause to be taken by, another, chloroform, ether, laudanum or any other intoxicating narcotic or anesthetic; or
(3) Shall wilfully inflict grievous bodily harm upon another with or without a weapon; or
(4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm; or
(5) Being armed with a deadly weapon shall wilfully assault another with a whip; or
(6) Shall assault another with intent to commit a felony, or to prevent or resist the execution of any lawful process or mandate of any court officer, or the lawful apprehension or detention of himself or another person; or
(7) While hunting any game or other animals or birds, shall shoot another;
Shall be guilty of assault in the second degree and be punished by imprisonment in the state penitentiary for not more than ten years or by a fine of not more than one thousand dollars, or by both.

**5.** The information contained the following language:

Comes now the Prosecuting Attorney in and for Spokane County, Washington, and charges the defendant, Charles Kreck, with the crime of Second-Degree Murder, committed as follows: That the defendant, Charles Kreck, in the County of Spokane, State of Washington, on or about the 14th day of June, 1971, then and there being, did then and there wilfuly and unlawfully, without excuse or justification, and while engaged in the commission of the crime of Assault in the Second Degree, make an assault upon Jacosa Kreck, and did administer to, and cause to be taken by, the said Jacosa Kreck, chloroform, and as a result thereof the said Jacosa Kreck did then and there, and on or about the 14th day of June, 1971, die.

the information necessarily limited the violation to subsection 2, § 9.11.020, RCW. As such, the State maintained, the information sufficiently apprised Kreck of the charge he would have to be prepared to meet (*i.e.,* second degree murder during the commission of a felony, namely, second degree assault by administering chloroform). Although the State acknowledges that, to prove second degree assault under subsection 2 of the statute, the chloroform must be used in the commission of another crime and that no underlying crime was identified in the information, the State contends that such identification was not required and, moreover, that an underlying crime, burglary, was proven by the facts adduced at trial.[6]

■ The federal district court, apparently accepting the State's proposition that the violation was limited to subsection 2 of the second degree assault statute, still found the information fatally defective on two grounds. First, the court held that the information failed to allege two of the essential elements of the second degree assault charge (*i.e.,* that the conduct of Kreck (1) enabled and assisted him to (2) commit any crime). Second, the court held that the information failed to identify the specific "any crime" (*i.e.,* burglary) which was assisted by the second degree assault. Noting that the resolution of the question of the sufficiency of any information presents a practical question which is to be answered by a practical inquiry,[7] the federal district court concluded that under federal law,[8] the information at issue was fatally defective since it did not give Kreck adequate notice of the charges against him to enable him to adequately prepare his defense. Accordingly, the district court concluded that the

Washington Supreme Court improperly affirmed a conviction for an offense which was not sufficiently charged. *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979).

## DISCUSSION

### I.  *Sufficiency of the Information*

■ Resolution of the question of whether the information at issue is sufficient to satisfy the prescriptions of the due process clause of the fourteenth amendment must begin with an analysis of what is required in order for a charging document to meet the precepts of fundamental fairness upon which the due process clause is bottomed. The requirement that any charging document must furnish a defendant with a sufficient description of the charge against him has long been recognized to serve a dual function, namely (1) to enable the defendant to adequately prepare his defense and (2) to enable him to plead double jeopardy against a second prosecution.[9] It is the former of these functions with which resolution as to the sufficiency of the charging instrument at issue lies, and upon which the decision of the federal district court which we are asked to review was founded.

We agree with the conclusion of the federal district court that the information was in fact insufficient in that it failed to serve the function that the law intended it to, namely, providing Kreck with adequate notice of the charges against him so as to enable him to prepare his defense.

■ The practical inquiry mandated by *Williamson v. United States,* 310 F.2d 192 (9th Cir.1962), leads to the inescapable conclusion that the failure to set forth the "any

---

6. The Washington Supreme Court in addressing the defendant's contention that the State failed to prove the crime charged, held that the State did in fact prove the crime of second degree burglary.

7. *Williamson v. United States,* 310 F.2d 192 (9th Cir.1962).

8. The constitutional sufficiency of an information is determined under federal law. *Paterno*

*v. Lyons,* 334 U.S. 314, 320, 68 S.Ct. 1044, 1047, 92 L.Ed. 1409 (1948).

9. *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Gordon,* 641 F.2d 1281 (9th Cir.), *cert. denied,* 454 U.S. 859, 102 S.Ct. 312, 70 L.Ed.2d 156 (1981); *United States v. Bohonus,* 628 F.2d 1167 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980); *United States v. Cecil,* 608 F.2d 1294 (9th Cir.1979).

crime" on which the second degree assault under subsection 2 was founded prejudiced Kreck in the preparation of his defense. The principle of fundamental fairness, essential to the concept of due process of law, dictates that the defendant in a criminal action should not be relegated to a position from which he must speculate as to what crime he will have to meet in defense.

The State seeks to impress upon this court that to require the inclusion in the information of the underlying crime on which the second degree assault is founded would institute a return to code pleading which was abolished by the Washington legislature in 1881. Section 10.01.030, RCW. In essence, the State maintains that to require it to set forth the underlying crime is to require it to allege a matter of proof. We concur with the trial judge of the district court in rejecting this contention as merely begging the issue at hand. The simplification of the technical requirements of common law pleading was not intended to force a defendant to trial without informing him of the crime charged against him. We cannot accept the proposition that his attempt to simplify the rules of pleading was in any way intended to undermine the fundamental rights of a criminal defendant.

■ Support for this conclusion, that a defendant facing a second degree murder charge which rests upon a second degree assault must be notified of the underlying crime on which the second degree assault is founded, is provided by the Washington Supreme Court. In evaluating the state's second degree assault statute in *State v. Royse*, 66 Wash.2d 552, 403 P.2d 838 (1965), that court held that a defendant charged with second degree assault under subsection 6 of the statute, § 9.11.020(6), RCW, which like subsection 2 involves intent to commit an underlying crime, must be made aware of the underlying crime on which the assault is founded. It cannot be credibly argued, as the State attempts to do in the present case, that the State may forgo this

requirement when second degree assault is utilized in conjunction with the felony murder rule.

■ Although the federal district court's conclusion that the information in question was defective should be affirmed, on the basis set forth in the above discussion, we feel compelled to comment on the State's proposition (which was accepted by the federal district court) that the inclusion of the term "chloroform" in the information necessarily limited the violation at issue to subsection 2 of the second degree assault statute, § 9.11.020, RCW. Analysis of the second degree assault statute reveals that the information as presented could arguably stand for the proposition that the defendant's violation fell within the purview of either subsection 1 or subsection 2 of that statute.[10] As such, Kreck was presented with the dilemma of preparing a defense to the second degree assault upon which the felony murder was founded without knowing whether the State would proceed on the theory that the second degree assault was founded on the "intent to injure" under subsection 1 or "to enable or assist himself . . . to commit any crime" under subsection 2. To allow the State to charge in such nebulous terms and proceed to trial on either of these theories would in itself be violative of the principle of fundamental fairness on which due process of law is bottomed. The practical inquiry as to the sufficiency of the information, as mandated by *Williamson, supra,* reveals that on this basis alone, Kreck would not have received the requisite notice to adequately prepare his defense. The information simply failed to adequately notify Kreck of the charge he should have been prepared to meet.[11]

## II. *Procedural Default*

Charles Kreck was convicted on the basis of a constitutionally repugnant charging instrument. Nonetheless, the State contends that Kreck is barred, under the principle of waiver as espoused in *Wainwright v. Sykes*,

---

**10.** *See* footnote 4, *supra.*

**11.** *See* footnote 9, *supra.*

433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), from obtaining federal habeas review via 28 U.S.C. § 2254.

Kreck first challenged the sufficiency of the information in his direct appeal to the Washington Court of Appeals. *See State v. Kreck,* 12 Wash.App. 748, 532 P.2d 285 (1975). The issue was subsequently presented, without success, to the Washington Supreme Court. *See State v. Kreck,* 86 Wash.2d 112, 542 P.2d 782 (1975). Kreck again raised the issue of sufficiency, but to no avail, in his petition for collateral review. The Washington Court of Appeals specifically relied on the fact that the Washington Supreme Court had addressed and disposed of the sufficiency of the information issue in Kreck's direct appeal when it denied his collateral petition. *In the Matter of Kreck,* No. 2465–III (Wash.App. decided August 12, 1977). The District Court concluded that Kreck had exhausted his state remedies on this question. Finally, both parties have now expressly agreed in submissions to this court that Kreck challenged the constitutional sufficiency of the charging instrument in every available state appellate forum.

The dissent, arguing that Kreck failed to raise the sufficiency of the information issue in his state appeals, looks only to ambiguous language in the Washington Courts' published opinions and ignores what the record before us shows Kreck raised and the state courts considered. The dissent is therefore factually mistaken when it asserts that Kreck is challenging the sufficiency of the information for the first time in these proceedings. We are acutely aware of the rule espoused by this court that a state cannot concede exhaustion. *Jackson v. Cupp,* 693 F.2d 867 (9th Cir. 1982). The present situation, however, is distinct from the bare concession made by the state in *Jackson.* The record in this matter substantiates the conclusion that the Washington Supreme Court was presented with a fair opportunity to rule on the merits of Kreck's claim regarding the sufficiency of the information. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1970); *Cartwright v. Cupp,* 650 F.2d 1103

(9th Cir.1981), *cert. denied,* 455 U.S. 1023, 102 S.Ct. 1722, 72 L.Ed.2d 142 (1982).

The State asserts that Washington's contemporaneous objection procedure, at the time of Kreck's trial, required that challenges to the sufficiency of a charging instrument be made at the trial level. The failure of Kreck to challenge the information with which he was charged, the State submits, represents an "independent and adequate" state ground for the state court judgment against Kreck, as recognized by the United States Supreme Court in *Sykes.* 433 U.S. at 86–87, 97 S.Ct. at 2506–2507. We disagree.

■ The rationale of *Sykes* is premised on comity and respect for the function of procedural rules in our judicial system. 433 U.S. at 88–90, 97 S.Ct. at 2507–2508. Accordingly, " . . . if neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." *Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *see also Maxwell v. Sumner,* 673 F.2d 1031 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). Restated, if a particular state has no clear policy barring review of constitutional claims not previously asserted, the rule of *Sykes* is simply inapplicable, since the principles of comity and finality, on which the rule is bottomed, are not fostered by federal non-intervention.

■ On two occasions, this court has rejected a state's invocation of the *Sykes* rule, upon the ground that the state procedural policy at issue did not qualify as an "independent and adequate" state ground for denying a federal habeas petitioner's claim. *See Maxwell v. Sumner, supra; Quigg v. Crist,* 616 F.2d 1107 (9th Cir.), *cert. denied,* 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980). We are again presented with a situation where a state's reliance on the *Sykes* rule is misplaced.

We conclude that there is no support either in the law of Washington or the

history of this litigation for an inference that the Washington courts decided Kreck's constitutional claim on an independent and adequate state procedural ground that would bar federal intervention via 28 U.S.C. § 2254. Washington has no clear contemporaneous objection policy that applies in this case.

We agree with the conclusion of the District Court in this matter, that the procedural rules of the State of Washington do not mandate that constitutional challenges to the sufficiency of a charging instrument be made before trial. Rather, Washington's contemporaneous objection procedure, at the time of Kreck's trial, allowed for errors of constitutional dimension to be raised on appeal even though they were not brought to the attention of the trial court. Section 7.36.130(1), RCW; Rule § 2.5(a) of The Rules of Appellate Procedure of the State of Washington ("a party may raise the following claimed errors for the first time in the appellate court: ... (3) manifest error affecting a constitutional right"). Our conclusion, in this respect, is clearly in accord with the decisional law extant in the State of Washington on this subject. *See In re Myers,* 91 Wash.2d 120, 587 P.2d 532 (1978), *cert. denied sub nom. Myers v. Washington,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979) ("In cases on direct appeal, we have uniformly reviewed questions of constitutional dimension even though they were not raised at trial"; 587 P.2d at 534); *State v. Ruzicka,* 89 Wash.2d 217, 570 P.2d 1208 (1977) (because constitutional questions existed, Washington Supreme Court could hear a claim even though it was not raised at trial; 570 P.2d at 1210); *see also State v. Rhinehart,* 92 Wash.2d 923, 602 P.2d 1188 (1979); *State v. Peterson,* 73 Wash.2d 303, 438 P.2d 183 (1968).

Moreover, the Washington Supreme Court, in accordance with the foregoing statutory and decisional law, addressed the merits of Kreck's contention regarding the sufficiency of the information at issue, rather than disposing of the issue on procedural grounds.

The case falls squarely within the purview of the decision of the United States Supreme Court in *Ulster County v. Allen, supra,* and this court's decision in *Quigg v. Crist, supra.* Accordingly, we reject the State's invocation of the *Sykes* rule.

### III. *Remaining Issues Raised*

In addition to the issues raised by the State, the briefs submitted to this court by the respondent and amicus curiae have addressed extensively the propriety of (1) the second degree felony murder statute, § 9.48.040, RCW, of the State of Washington and (2) the admission of hearsay evidence pursuant to the business records exceptions, which evidence goes to the heart of crucial issues on trial.

Since the federal district court's decision must be affirmed on the basis of the inadequacy of the information at issue, this court need not and should not address those constitutional issues. *Life Insurance Co. of North America v. Reichardt,* 591 F.2d 499 (9th Cir.1979); *Taylor v. United States,* 320 F.2d 843 (9th Cir.1963).

AFFIRMED.

ALARCON, Circuit Judge, dissenting.

I respectfully dissent.

My colleagues have concluded that a state prisoner who failed to make a contemporaneous objection before the appropriate state court as to the sufficiency of the information, or to exhaust his state remedies, may nevertheless raise that issue for the first time in a federal habeas corpus proceeding. It is my view that the majority's conclusion is in clear conflict with the decision of the United States Supreme Court in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and *Ex Parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1885). For the reasons set forth below, I would reverse the judgment under compulsion of *Wainwright v. Sykes* and *Ex Parte Royall,* and remand this matter to the district court for a determination of the remaining issues raised in the petition which have not been considered on their merits by that court.

## DISPOSITIVE FACTS

Charles Kreck was charged on June 25, 1971 with the crime of second degree murder allegedly committed on June 14, 1971. After his arrest petitioner was found to be incompetent to stand trial and was confined to a state mental institution for over two years until it was determined that he was competent to stand trial.

At oral argument before this court, petitioner's trial counsel advised us that he waived trial by jury because he believed that the uncontradicted evidence would show that his client "did not realize or could not understand the consequences of his act nor the criminality of his acts." We were also told that the defense strategy was "primarily" directed at convincing the trial judge that Kreck was insane at the time of the commission of the offense and should therefore escape punishment. According to petitioner's counsel, his whole case was "shot" when the state trial judge accepted the credibility of Dr. Levy that Kreck "knew right from wrong . . ." in spite of the fact that the witness never examined Kreck.

No challenge was made to the sufficiency of the accusatory pleading before the Washington trial court at any time prior to the entry of judgment.

Petitioner appealed the judgment of conviction to the Washington Court of Appeals. That court reversed on the ground that petitioner's sixth amendment right to confrontation was denied to him. *State v. Kreck,* 12 Wash.App. 748, 532 P.2d 285 (1975). The Supreme Court of Washington granted the state's petition for review of the order of the Court of Appeals. The Supreme Court reversed the Court of Appeals thereby affirming the judgment of conviction. *State v. Kreck,* 86 Wash.2d 112, 542 P.2d 782 (1975). In his state appeals, petitioner failed to challenge the sufficiency of the information.

The majority states that "Kreck first challenged the *sufficiency of the information* in his direct appeal to the Washington Court of Appeals. *See State v. Kreck,* 12 Wash.App. 748, 532 P.2d 285 (1975)." (em-

phasis added). (Page 1234). This statement is both baffling and without foundation. The majority has failed to cite the page in the Washington Court of Appeals decision where this challenge is discussed. I have read the decision of the Washington Court of Appeals with considerable care. Nowhere in that opinion is there any reference to a challenge by Kreck to the sufficiency of the *information.* Kreck's contention before the Washington Court of Appeals was that "the state failed to *prove* the crime of second-degree assault as defined in R.C.W. 9.11.020(2)." (emphasis added). 532 P.2d at 289. The majority next tells us that "[t]he issue was subsequently presented without success to the Washington Supreme Court. *See State v. Kreck,* 86 Wash.2d 112, 542 P.2d 782 (1975)." (Page 1234). Without further discussion, or appropriate quotation from the Washington Supreme Court's opinion, we are again asked to read the opinion, to assure ourselves that this issue of the sufficiency of the *information* was raised. As directed by the majority, I have read the opinion of the Washington Supreme Court. I find no reference to any contention by Kreck that the *information* was insufficient. Instead the Washington Supreme Court notes that the "[d]efendant contends that the state failed to *prove* the crime charged of second degree murder, defined in R.C.W. 9.48.040(2) (felony murder)." (emphasis added). *Id.* 542 P.2d at 788.

The only conclusion one can fairly draw from reading the opinions of the Washington courts is that in his direct appeals, Kreck challenged the sufficiency of the *evidence* and *not* the sufficiency of the *information.*

The majority further advises us that "Kreck again raised the issue of sufficiency, but to no avail, in his petition for collateral review." (Page 1234). This time we are referred to an unpublished order or opinion and advised that "the Washington Court of Appeals specifically relied on the fact that the Washington Supreme Court had addressed and disposed the issue of the sufficiency of the *information* issue in Kreck's

direct appeal when it denied his collateral petition." (Page 1234). (emphasis added).

As is apparent from the published opinions of the Washington Supreme Court and the Washington Court of Appeals, Kreck did not raise the issue of the sufficiency of the *information* on direct appeal. (I have appended both opinions at the end of this dissenting expression for the convenience of any reader of these words.) Furthermore, he did not seek further review before the Washington Supreme Court of the clearly erroneous legal conclusions which my colleagues tell us are set forth in the unpublished order or opinion of the Washington Court of Appeals.

The majority, having read an earlier draft of this dissenting expression states: "[T]he District Court concluded that Kreck had exhausted his state remedies on this question." (Page 1234). The majority does not, however, point to any facts in the *record* which support the district court's legal conclusion. The reason for this omission is clear. There are no facts in the record which establish exhaustion.

After reading the majority opinion, I can only surmise that my colleagues have simply confused a challenge to the legal sufficiency of the *proof* presented at trial to show the commission of a crime, with a due process attack on the adequacy of the *pleadings,* to give an accused fair notice of the charges against him. These issues have about as much in common as eggs and bananas. We have not been referred to any authority which would support the remarkable theory that these discrete questions are in fact identical.

## CHALLENGE TO SUFFICIENCY OF ACCUSATORY PLEADINGS UNDER WASHINGTON LAW

It has long been the law of the State of Washington that the sufficiency of an indictment may not be challenged for the first time on appeal. The Washington Supreme Court has stated the rule in that state as follows: "Under our uniform holding, the sufficiency of the information cannot be raised for the first time in this court." *State v. Piper,* 194 Wash. 194, 77 P.2d 779 (1938).

Washington provides three separate procedural remedies for attacking the sufficiency of an information.

### One. Bill of Particulars

Under Criminal Rule 2.1(e) a defendant may make a motion for a bill of particulars "before arraignment or within ten days after arraignment or at such later time as the court may permit." Wash.Super.Ct.Cr.R. 2.1(e).

An objection to the sufficiency or definitions of an accusatory pleading must be made before trial commences. If such a motion is delayed until the beginning of trial, it is untimely. *State v. Thomas,* 73 Wash.2d 729, 440 P.2d 488, 491 (1968).

### Two. Demurrer

In Washington, a defendant may demur to an indictment or an information:

"[W]hen it appears upon its face either (1) That it does not substantially conform to the requirements of this code; (2) [That] more than one crime is charged; (3) That the facts charged do not constitute a crime; (4) That the indictment or information contains any matter which, if true, would constitute a defense or other legal bar to the action." Wash.Rev.Code Ann. § 10.40.110.

A demurrer must be made prior to the entry of a plea. A demurrer to the sufficiency of an indictment is untimely if made after the entry of a plea of not guilty. *State v. Speer,* 36 Wash.2d 15, 216 P.2d 203, 207 (1950); *State v. McBride,* 72 Wash. 390, 130 P. 486, 488 (1913).

### Three. Motion in Arrest of Judgment

A defendant may contest the sufficiency of an indictment or information in the trial court on a motion in arrest of judgment at any time prior to the entry of judgment. *State v. Taes,* 5 Wash.2d 51, 104 P.2d 751, 758 (1940).

Thus, it is clear that Washington requires a defendant to challenge the sufficiency of an indictment or information in the trial court if he wishes to preserve that issue for appellate review. As noted above, Kreck

failed to object to the sufficiency of the indictment in the trial court. His decision not to do so was a deliberate tactic based on counsel's mistaken but good faith belief that his client would readily escape punishment on a finding of not guilty by reason of insanity.

## COLLATERAL CHALLENGE TO THE SUFFICIENCY OF AN INFORMATION

Kreck has challenged the sufficiency of the information for the first time in the federal district court by means of a federal habeas corpus proceeding. Ironically, if he had been convicted in a federal court he could not do so. In *Moore v. Shuttlesworth,* 180 F.2d 889 (6th Cir.1950) the court expressed the applicable law as follows:

> It is urged upon us that appellant was convicted upon an indictment which was contrary to the statute, but *as a general rule the question of the sufficiency of the indictment is not open upon habeas corpus;* neither is the question of the sufficiency of the evidence to support the verdict, and nothing is presented here to take the case out of the general rule. *Id.* at 890. (emphasis added).

The majority of this court has today given a state prisoner who attacked the sufficiency of the accusatory pleading greater rights under the federal constitution than those available to a federal prisoner who would make precisely the same challenge. I believe this bold extension of federal habeas corpus relief is not only unprecedented but also unwarranted under existing legal principles.

## APPLICABILITY OF THE CONTEMPORANEOUS OBJECTION RULE

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) the Supreme Court reaffirmed its view that a state prisoner is prevented from obtaining review of *federal* constitutional questions in a federal habeas corpus proceeding where he has failed to raise them in the state court as required by state procedure. Specifically, the Court held that the failure to make a timely objection on federal constitutional grounds "amounted to an independent and adequate state procedural ground

which would have prevented direct review here." *Id.* at 87, 97 S.Ct. at 2506.

In the matter before this court, petitioner failed to object to the sufficiency of the accusatory pleading, before the trial court, as expressly required by Washington law under *State v. Piper.* Trial counsel's reasons for not objecting were based upon a determination that it was in his client's best interests to convince the trial judge that his client was not guilty by insanity. His strategy misfired. He now seeks the assistance of the federal court system to overturn his conviction on due process grounds he deliberately withheld in the state court system. As observed by the Supreme Court in *Wainwright v. Sykes,* the granting of a petition for a writ of habeas corpus under the circumstances of this case "may encourage 'sandbagging' on the part of defense lawyers, who may take their chances on a verdict of not guilty in a state trial court with the intent to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off." *Id.* at 89, 97 S.Ct. at 2508.

The majority tells us that Washington's contemporaneous objection rule permits the raising of the sufficiency of the information on appeal even though this issue was not brought to the attention of the trial court. The majority fails to cite any authority for this novel proposition. As noted above, in the only case in Washington which discusses this precise issue, *State v. Piper,* 194 Wash. 194, 77 P.2d 779 (1938), the Washington Supreme Court held that a challenge to the sufficiency of the information *cannot* be raised for the first time in an appellate court. *Id.* at 779. Curiously, the majority fails to cite or discuss the *Piper* case, in spite of the fact that it is squarely in point and dispositive. Instead we are referred to three cases decided *after* the trial and appeal in this matter which do not mention a challenge to the sufficiency of the information. In the first case cited, *In re Myers,* 91 Wash.2d 120, 587 P.2d 532 (1978), *cert. denied, sub nom. Myers v. Washington,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979), the petitioner sought collateral re-

view of the following issues: (1) involuntariness of his confession; (2) prejudicial pretrial publicity; (3) denial of counsel at a critical stage of the proceedings; (4) the prosecutor's failure to disclose favorable information; and (5) instructional error. In discussing the first four issues, the Washington Supreme Court stated: "Each of these alleged infirmities was apparent either before trial or prior to the end of trial and each could have been raised on appeal. Since none of the claimed errors was raised, none provides a ground for Myers release from personal restraint." *Id.* 587 P.2d at 533. In support of this holding, the court relied on the principle that habeas corpus may not be used as a substitute for appeal.

As to the instructional error, the Washington Supreme Court, in *Myers,* refused to consider the issues raised by the petitioner in spite of the fact that constitutional error occurred. The Washington Supreme Court stated:

> We find that the interest of state in achieving a final judgment not subject to the frustrations associated with retrial years after the original proceeding outweighs any interest in readjudicating convictions according to subsequently developed legal standards. Executive clemency and the parole system are available for those cases that are particularly deserving. Accordingly, we hold that the general rule—*i.e.,* the failure to identify errors at trial or prosecute them on appeal precludes reliance thereon in subsequent proceedings—applies to alleged errors [of constitutional dimension] raised for the first time on collateral attack. *Id.* at 535.

Thus, the law in the state of Washington is free from doubt. The insufficiency of the information cannot be raised for the first time on appeal under *Piper,* nor can errors of constitutional dimension be raised collaterally under *Myers.* In the instant matter, Kreck failed to raise the issue of the sufficiency of the *information* at trial as required by *Piper.* Under *Myers,* he could not raise it for the first time in a collateral attack in the judgment.

Kreck failed to make a contemporaneous objection to the sufficiency of the information in the Washington courts. Under such circumstances, *Wainwright v. Sykes* does not permit the federal courts to consider a petition for a writ of habeas corpus.

### Exhaustion of State Remedies

As discussed above, it is unmistakably clear that the Washington Supreme Court did not address, consider, or dispose of any questions relating to the sufficiency of the *information.* This issue was not presented in either of Kreck's direct appeals. Thus, the conclusion reached by the Washington Court of Appeals on collateral review, at least as interpreted by my colleagues, was clearly wrong. In spite of this obvious error, Kreck failed to seek a hearing before the Washington Supreme Court to challenge the Court of Appeals dismissal of his petition for collateral review.

Almost one hundred years ago, the United States Supreme Court taught us that a federal court ought not to consider a habeas corpus petition until all state remedies have been exhausted *Ex Parte Royall,* 117 U.S. 241, 250–54, 6 S.Ct. 734, 739–41, 29 L.Ed 868 (1885). By permitting Kreck to raise this issue in a federal habeas corpus petition, the majority has authorized Kreck to bypass his state's appellate courts.

### CONCLUSION

It is my view that under *Ex Parte Royall* and *Wainwright v. Sykes,* we must reverse this matter. Petitioner failed to file a demurrer, request a bill of particulars, or move in arrest of judgment to contest the sufficiency of the accusatory pleading. As a result he was barred from raising this issue on appeal by the decision of the Washington Supreme Court in *State v. Piper.* Had he raised this claim before trial, the prosecutor would have had an opportunity to amend his pleadings or pursue other appropriate procedures under Washington law to cure the defect and afford the accused adequate notice and due process. Instead, as a result of this court's holding and petitioner's trial strategy, the State of Washington is now faced with a retrial more

than twelve years after the commission of the crime.

It is bewildering to me that the majority has now determined that in spite of his failure to exhaust state remedies or to comply with the contemporaneous objection rule, a state prisoner may challenge the sufficiency of the accusatory pleading, for the first time, in a federal habeas corpus proceeding upon federal constitutional grounds whereas a federal prisoner may not do so under *Moore v. Shuttleworth.* Further, under *In re Myers,* Kreck could not raise this issue for the first time on a collateral attack on the judgment in the Washington state courts. This petitioner has effectively bypassed state review of his contentions by deliberately failing to object in a timely manner.

Petitioner's ingenious manipulation of the state and federal court systems has finally borne fruit.

APPENDIX

86 Wash.2d 112

The STATE of Washington, Petitioner,

v.

Charles KRECK, Respondent.

No. 43704.

Supreme Court of Washington,
En Banc.

Nov. 20, 1975.

Defendant was convicted in the Superior Court, Spokane County, of second-degree murder and he appealed. The Court of Appeals, 12 Wash.App. 748, 532 P.2d 285, Ray E. Munson, J., reversed and remanded for new trial and, on petition of state, review was granted. The Supreme Court, Horowitz, J., held that report of chemical blood analysis made in course of business of state toxicological laboratory under supervision of state toxicologist who conferred with chemist conducting tests and personally verified results was not inadmissible as violating Sixth Amendment confrontation clause or corresponding state constitutional and statutory provisions because chemist

who conducted test was not produced as witness and state made no attempt to obtain his testimony; that the report was admissible under the Uniform Business Records as Evidence Act; and that evidence sustained conviction.

Reversed.

**1. Criminal Law ⚖436, 662(4)**

Report of chemical blood analysis made in course of business of state toxicological laboratory under supervision of state toxicologist who conferred with chemist conducting tests and personally verified results was not inadmissible as violating Sixth Amendment confrontation clause or corresponding state constitutional and statutory provisions because chemist who conducted test was not produced as witness and state made no attempt to obtain his testimony and the report was admissible under the Uniform Business Records as Evidence Act. RCWA 5.45.010 et seq.; U.S.C.A. Const. Amend. 6.

**2. Criminal Law ⚖436**

Under Uniform Business Records as Evidence Act requiring that record be of an act, condition or event, entries in forms of opinions or statements as to cause are not admissible. RCWA 5.45.020.

**3. Criminal Law ⚖436**

Within rule that entry in form of opinion or statement as to cause is not admissible under the Uniform Business Records as Evidence Act, finding of chloroform content in blood of defendant's deceased wife was not an "opinion" or "statement". RCWA 5.45.020.

See publication Words and Phrases for other judicial constructions and definitions.

**4. Criminal Law ⚖436**

Important to meeting requirement of Uniform Business Records as Evidence Act that the record be made in regular course of business is absence of motive and opportunity to falsify the record. RCWA 5.45.020.

**5. Criminal Law ⚖444**

Where laboratory report showed that blood sample had been received at laborato-

ry on June 16, 1971 and final report signed on June 22, 1971, requirement of Uniform Business Records as Evidence Act that record be made at or near time of act, condition or event was met. RCWA 5.45.020.

**6. Criminal Law ⚖444**

Where state laboratory report of blood analysis was signed by chemist who personally conducted the tests, requirement of Uniform Business Records as Evidence Act that source of information, method and preparation be such as to justify its admission was met. RCWA 5.45.020.

**7. Criminal Law ⚖436**

Uniform Business Records as Evidence Act was adopted to void necessity of calling as a witness persons such as state chemist who two years prior to trial had likely made over 1,000 blood tests similar to that on which report sought to be admitted into evidence was made. RCWA 5.45.020.

**8. Criminal Law ⚖1153(1)**

Court's discretion in admitting record under Uniform Business Records as Evidence Act is subject to review for manifest abuse of discretion. RCWA 5.45.020.

**9. Homicide ⚖254**

Evidence sustained conviction of second-degree murder on basis that defendant had administered chloroform to his wife, from whom he was living apart, to enable or assist him in committing crime of second-degree burglary. RCWA 9.11.020(2), 9.19.020, 9.48.040(2).

**10. Criminal Law ⚖486**

Where doctor examined defendant out of court for an hour, he was competent to give an opinion as to defendant's mental condition based upon that examination. RCWA 10.77.100.

**11. Criminal Law ⚖698(1)**

Where defense counsel told court he would not object to questioning of doctor who had examined defendant out of court for an hour and defense counsel questioned doctor as to his diagnosis of defendant's mental condition, there was no error in permitting doctor to answer. RCWA 10.77.100.

**12. Homicide ⚖236(3), 237**

In homicide prosecution, evidence sustained finding that defendant had administered chloroform to his wife as a direct result of which she died, that, prior to commission of crime, defendant had been able to control himself, and that, on day of crime, defendant did not demonstrate any symptoms of insanity. RCWA 5.45.010 et seq.; U.S.C.A. Const.Amend. 6.

**13. Searches and Seizures ⚖7(27)**

Where defendant rented one-half of garage which was divided in two by a partition and, with permission of rental manager, police entered unrented half of garage, pried off a board on the partition and saw a paper bag within the partition, such initial investigation, which led to issuance of search warrant, was not illegal.

Donald C. Brockett, Pros. Atty., LeRoy C. Kinnie, Chief Deputy Pros. Atty., Spokane, for petitioner.

Victor J. Felice, Spokane, for respondent.

HOROWITZ, Associate Justice.

On petition of the state, review was granted of a decision of the Court of Appeals, Division Three (12 Wash.App. 748, 532 P.2d 285 (1975)), which reversed the conviction in the superior court of defendant Charles Kreck for second degree murder, the case being tried to the court. The principal issue is whether admission of a laboratory report of a blood test as evidence under RCW ch. 5.45—the Uniform Business Records as Evidence Act—violates the Sixth Amendment right of confrontation.

On June 14, 1971, defendant, who was living apart from his wife, called the Spokane Police Department to request assistance for his wife, Jocosa, who was then unconscious. Upon arrival, the police found defendant attempting to administer artificial respiration to his wife. It was evident to the police officers, however, that defendant's wife was dead.

Neither police investigation nor autopsy revealed the cause of death. A blood sam-

ple from Jocosa Kreck was sent by Dr. Randell E. Davis of the Deaconess Hospital in Spokane, who supervised the autopsy, to Dr. Ted Loomis, the state toxicologist, at the State Toxicological Laboratory at the University of Washington. Subsequently, the police received information the defendant had been planning to rob his wife and had purchased chloroform for this purpose. This information was forwarded to Dr. Loomis by Dr. Davis with the request to test the blood for chloroform. Dr. Loomis then directed Ronald Skinner, a trained chemist on the staff of the toxicological laboratory working under Dr. Loomis's supervision, to test the blood sample for chloroform and ethanol (the ethanol test is made on every blood sample received). Ronald Skinner did so. The laboratory report of these tests, dated June 22, 1971, was signed by him, identifies the person from whom the sample was taken (Jocosa Kreck), the date the sample was received (June 16, 1971), the material submitted for examination (blood). The results of the test for chloroform is shown in the report as follows: "Test: chloroform; Result: 26.0 mg%."

During trial Dr. Loomis testified to the way in which the test was conducted, how the report was prepared, and his role as supervisor. He also testified that while he did not personally conduct the test, he did confer with Mr. Skinner in his supervisory capacity and verified the test results. After having been qualified as an expert, Dr. Loomis testified that in his opinion the amount of chloroform found in the decedent's blood, as shown by the report, was the cause of death.

The trial court admitted in evidence both the laboratory report and the testimony of Dr. Loomis, over defendant's objection that he had the right to cross-examine Ronald Skinner before the report could be admit-

ted. Mr. Skinner was not produced as a witness because he was in Germany on business at the time of the trial, and the state made no effort to obtain his testimony. The trial court admitted the report by relying upon RCW ch. 5.45, the Uniform Business Records as Evidence Act, as interpreted in *State v. Boehme,* 71 Wash.2d 621, 430 P.2d 527 (1967), and *State v. Rutherford,* 66 Wash.2d 851, 405 P.2d 719 (1965).[1]

RCW 5.45.020 provides:

A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

In *State v. Rutherford, supra,* a criminal case, the court held that under RCW 5.45.-020, the chief of materials testing for the Air Force could testify as to the results of physical tests conducted by one of his assistants under his supervision, even though he had not personally observed the performance of the tests. The court stated that either the written record of the tests report or testimony as to the contents of the record by the person who made the record was admissible under the Act. In *State v. Boehme, supra,* also a criminal case, the court relying on *Rutherford,* permitted a pathologist from the office of the chief medical examiner of the state of Maryland to testify to the results of tests upon blood samples conducted by an assistant under his supervision and control, although he had not personally observed the test.

Cases from other jurisdictions hold that where a foundation has been established that the report and test were made in the

1. The state did not seek to render the report admissible as a certified copy of an official record under RCW 5.44.040, *see Steel v. Johnson,* 9 Wash.2d 347, 115 P.2d 145 (1941); *Hing Wan Wong v. Liquor Control Co.,* 160 Conn. 1, 273 A.2d 709 (1970) (reports of state toxicology laboratory are competent evidence of their con-

tents under the public records exception to the hearsay rule): or to claim that no hearsay is involved, because Dr. Loomis personally supervised and verified the test. *See, e.g., Boehme v. Maxwell,* 309 F.Supp. 1106 (W.D.Wash. 1968). We make no determination of admissibility on either of these two grounds.

regular course of business, and there is no question as to the identity of the material tested, the report is admissible in evidence. Annot., 19 A.L.R.3d 1008, 1021–25 (1968).

The report in the instant case is of a chemical blood sample analysis prepared under the supervision of the Washington State Toxicologist, who conferred with the chemist conducting the tests, and personally verified the results. The tests were clearly made in the course of the business of the Washington State Toxicological Laboratory. No objection was made below to the reliability of the tests, and no attack was made upon the reliability of the tests by testimony offered on defendant's behalf. As later appears in discussing the confrontation clause, the report met the requirements of RCW ch. 5.45.

Defendant contends, however, the report was inadmissible as violative of the Sixth Amendment in that Mr. Skinner was not produced as a witness and the state made no attempt to obtain his testimony. We disagree.[2] The purpose of the confrontation clause is stated in *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895):

> The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits ... being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*See also* 5 *Wigmore on Evidence* § 1395 (3d ed. 1940).

This right of confrontation, however, has always been subject to exceptions:

But this general rule of law embodied in the Constitution ... intended to secure the right of the accused to meet the witnesses face to face, and to thus sift the testimony produced against him, has always had certain well recognized exceptions. As examples are cases where the notes of testimony of deceased witnesses, of which the accused has had the right of cross-examination in a former trial, have been admitted. Dying declarations, although not made in the presence of the accused, are uniformly recognized as competent testimony.... Documentary evidence to establish collateral facts, admissible under the common law, may be admitted in evidence.

*Dowdell v. United States,* 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753 (1911). These exceptions are subject to modification and addition, so long as the purpose of the rule is not hindered:

> The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule.

*Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *accord, State v. Ortego,* 22 Wash.2d 552, 563, 157 P.2d 320 (1945). The Massachusetts Supreme Court, admitting in evidence four certificates from the state department of health to prove the alcoholic contents of "moonshine," stated:

> One of the acknowledged exceptions to the face-to-face rule of evidence is that public records are competent evidence when of probative value respecting an issuable fact. That is an ancient principle of the common law, recognized at the time of the adoption of the Constitution.... It cannot be thought that the Constitution was intended to close the door to the legislative department of government to establish new public records with like probative value. Existing public records did not become rigid for all time for evidential purposes. Power to

---

**2.** The Sixth Amendment's confrontation clause is now binding upon the states under the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Washington protects the right of confrontation both by constitution and statute. Const. art. 1, § 22; RCW 10.52.060.

add to the varieties of public records under the principles of law prevailing at the time of the adoption of the Constitution is conferred upon the General Court under the grant to make, ordain, and establish all manner of wholesome and reasonable laws not repugnant to the Constitution. There is analogy in this respect to the trial by jury preserved in all its essentials by the Constitution, which may be regulated by the legislature as to details not impairing its essential integrity.

*Commonwealth v. Slavski,* 245 Mass. 405, 140 N.E. 465, 468, 29 A.L.R. 281 (1923); *accord, Kay v. United States,* 255 F.2d 476, 480–81 (4th Cir.1958).

Exactly when a particular exception to the hearsay rule infringes upon the right of confrontation has not been fully explored by the United States Supreme Court. Guidelines exist in *Dutton v. Evans,* 400 U.S. 74, 86–89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In *Dutton* the court expressly refused to equate the confrontation clause and the evidentiary hearsay rule. The court's concern was with the reliability of the evidence. As *Dutton* puts it:

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement."

400 U.S. at 89, 91 S.Ct. at 220. In Congressional Research Service (Library of Congress), *The Constitution of the United States of America—Analysis and Interpretation* 1214 (1973), the rule in *Dutton* is explained:

> [T]his is to be ascertained in each case by focusing on the reliability of the proferred hearsay statement, that is, by an inquiry into the likelihood that cross-examination of the declarant at trial could successfully call into question the declaration's apparent meaning or the declarant's sincerity, perception, or memory.

*State v. Smith,* Wash., 540 P.2d 424 (1975), emphasizes the necessity of reliability of the evidence offered if it is to be admitted without violating the confrontation clause.

The Uniform Business Records as Evidence Act contains five requirements for admissibility, each designed to insure the reliability of the evidence. *See McCormick on Evidence* §§ 307–10 (1972).

(1) The evidence must be in the form of a "record." RCW 5.45.020. "The policy underlying the rule suggests that only reports preserved in some relatively permanent manner will have those characteristics relied upon to establish accuracy." *McCormick, supra* at § 307, p. 720. The laboratory report in the instant case met this requirement.

(2) The record must be of an "act, condition or event." Accordingly, entries in the form of opinions or statements as to cause are not admissible. *Young v. Liddington,* 50 Wash.2d 78, 85, 309 P.2d 761 (1957). The finding of chloroform content is not an opinion or statement of cause within the meaning of this rule. In *Kay v. United States,* 255 F.2d 476, 481 (4th Cir. 1958), the court stated:

> the alcoholic content of the blood, the evidentiary fact sought to be proved by the certificate, may be accurately determined by well recognized chemical procedures. It is an objective fact, not a mere expression of opinion....

The laboratory report showing the percentage of chloroform in a blood sample from Jocosa Kreck is an objective fact.

(3) The record must be made in the regular course of business. Important to meeting this requirement is the absence of "a motive and opportunity to falsify the record..." McCormick, *supra* at § 308, p. 724. The laboratory report meets this requirement; it was made in the regular course of the business of the State Toxicological Laboratory.

(4) The record must be made "at or near the time of the act, condition or event..." RCW 5.45.020. The laboratory report shows that the blood sample was received at the laboratory on June 16, 1971, and the final report signed on June 22,

1971. The testimony of Dr. Loomis was that the nature and results of the tests are placed on a work sheet by the person conducting the tests, and this information is transcribed by a secretary from the work sheet onto the final report form. This procedure appears to insure against the possibility of inaccuracy by lapse of memory or otherwise. The circumstances and procedure under which the tests were conducted show the report clearly meets this fourth requirement.

■ (5) The court must be satisfied that "the sources of information, method and time of preparation were such as to justify its admission." RCW 5.45.020. McCormick suggests this requirement can usually be met when the record has been made upon the personal knowledge of the recorder. McCormick, *supra* at § 310. Here, the laboratory report was signed by the chemist who personally conducted the tests. This requirement was met.

■ RCW 5.45.020 contains no requirement that the person who prepared the record be shown to be unavailable before the record can be admitted. "This silence seems intended to dispense with the requirement." McCormick, *supra* at § 311. This conclusion is both logical and practical. In the routine activity which gives rise to an admissible business record, the persons involved are unlikely to recall the details of the transaction or event in question. McCormick, *supra* at § 311. The laboratory report in the instant case illustrates this principle. Dr. Loomis testified that his laboratory conducts between 2000 and 2400 tests per year, which are done by himself and two qualified chemists, including Mr. Skinner. The tests in question were made in June 1971, and the trial was in November 1973. The likelihood that Mr. Skinner, in late 1973, would remember the details of a routine test made over two years before, when he has likely made over 1000 similar tests in the meantime, is remote. The statute was adopted to avoid the necessity of calling such a person as a witness. *Young v. Liddington, supra,* 50 Wash.2d 83, 309 P.2d 761.

■ Moreover, the reliability of the report is protected by the rule that the court's discretion in admitting the report is subject to review for manifest abuse of discretion. *DeYoung v. Campbell,* 51 Wash.2d 11, 17, 315 P.2d 629 (1957); *Cantrill v. American Mail Line,* 42 Wash.2d 590, 698, 257 P.2d 179 (1953).

The great majority of cases in other jurisdictions have upheld the admissibility of a laboratory report or similar record in the face of a Sixth Amendment objection. *See, e.g., Kay v. United States,* 255 F.2d 476, 480–81 (4th Cir.1958) (duly-attested copy of certificate reporting alcoholic content of blood sample admissible as official record— no confrontation clause violation); *State v. Torello,* 103 Conn. 511, 131 A. 429 (1925) (certified copy of record of state chemist admissible as official document for proving alcohol content of liquor purchased by defendant—no confrontation clause violation); *People v. Porter,* 46 A.D.2d 307, 362 N.Y. S.2d 249 (1974) (log book record of blood sample alcohol test admissible as business record—no confrontation clause violation); *Robertson v. Commonwealth,* 211 Va. 62, 175 S.E.2d 260 (1970) (attested copies of laboratory reports of chemical analysis by state medical examiner of vaginal swabs from alleged rape victim admissible as official record—no violation of confrontation clause). Additional cases are cited in the margin.[3]

---

**3.** *See also United States ex rel. Lurry v. Johnson,* 378 F.Supp. 818, 822 (E.D.Pa.1974); *Henson v. State,* Del., 332 A.2d 773, 775 (1975); *Commonwealth v. Slavski,* 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281 (1923); *State v. Durham,* 418 S.W.2d 23 (Mo.1967); *People v. Nisonoff,* 293 N.Y. 597, 59 N.E.2d 420 (1944); *Commonwealth v. Goldsmith,* 176 Pa. 283, 106 A.2d 649 (1954); *Evans v. State,* 480 S.W.2d 387 (Tex.Cr.App.1972); *Bracy v. Commonwealth,*

119 Va. 867, 89 S.E. 144 (1916); *State v. Finkley,* 6 Wash.App. 278, 492 P.2d 222 (1972).

Defendant characterizes the Skinner report as crucial. Neither RCW ch. 5.45 nor the above cases holding laboratory reports admissible, limit admissibility to non-crucial evidence. If the evidence is deemed reliable so as to be admissible without violating the confrontation clause (*Mancusi v. Stubbs,* 408 U.S. 204, 213,

We hold, therefore, that this laboratory report, because it meets the requirements for admissibility of RCW 5.45.020 and because the circumstances under which it was prepared demonstrate its trustworthiness, is sufficiently reliable to meet the reliability requirement of the confrontation provision of the Sixth Amendment as well as the corresponding Washington provisions contained in Const. art. 1, § 22, and RCW 10.52.060.

We turn to an examination of defendant's remaining assignments of error.

Defendant contends the state failed to prove the crime charged of second degree murder, defined in RCW 9.48.040(2) (felony murder). The trial court found defendant guilty of second degree assault, a felony, under RCW 9.11.020(2), and therefore second degree murder. However, the felony in RCW 9.11.020(2) is not committed unless chloroform is administered with the intent "to enable or assist" the assailant in committing "any crime." The trial court did not state what that crime was. The state points out that it did prove an additional crime, namely burglary, and that the administration of chloroform was in furtherance of that crime. The court found defendant enlisted the aid of two 16-year-old boys in the plan to break into the home of defendant's estranged wife and recover some furniture and that the chloroform was purchased and used for the purpose of quieting the decedent should she offer any resistance. The undisputed evidence also shows defendant even suggested that wide straps be used to confine his wife should she resist because the straps would leave no marks. We agree that the evidence described is substantial evidence that defendant administered the chloroform "to enable or assist himself" in committing the crime of second degree burglary as defined in RCW 9.19.020. See State v. Jaime, 62 Wash.2d 610, 616, 384 P.2d 363 (1963). Accordingly, defendant was properly held guilty of felony murder as charged.

Defendant next contends the testimony of Dr. Sol Levy did not comply with the Laws of 1973, 1st Ex.Sess., ch. 117 § 10, p. 801. He contends Dr. Levy neither examined defendant nor formed a diagnosis of defendant's mental condition. Regardless of the reach of this portion of the statute (repealed, Laws of 1974, 1st Ex. Sess., ch. 198, § 9, p. 791), defendant's contentions are not supported by the record. The record shows Dr. Levy did examine defendant out of court for an hour and was therefore competent to give an opinion based upon this examination. In addition, defendant's counsel told the court he would not object to the questioning of Dr. Levy and in fact, did question Dr. Levy himself as to his diagnosis. Therefore there was no error permitting him to answer. State v. Jones, 70 Wash.2d 591, 597, 424 P.2d 665 (1967); Seth v. Dep't of Labor & Ind., 21 Wash.2d 691, 693, 152 P.2d 976 (1944).

Defendant also argues the four findings of fact to which he assigns error are not supported by evidence. He objects to the first finding of fact that "the defendant ... administered chloroform to his wife ... as a direct result of which [she] died ..."; and the third finding of fact that "prior to the commission of the crime the defendant was able to control himself, and thus maintain his employment with the State Highway Department"; the fourth finding of fact, that on the day of the crime defendant "did not demonstrate any symptoms of insanity"; and the seventh finding of fact that "the defense failed to meet its burden of showing that the defendant was legally insane at the time of the commission of the crime."

The record shows there is substantial evidence upon which these findings could be based. The supreme court should not disturb them. House v. Erwin, 83 Wash.2d 898, 900, 524 P.2d 911 (1974).

Defendant finally contends the initial police investigation leading to the is-

92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)), the question of the crucial nature of the evidence should

make no difference.

suance of a search warrant was illegal. We do not agree. Defendant rented one-half of a garage which was divided in two by a partition. With the permission of the rental manager the police entered the unrented half of the garage, pried off a board on the partition, and saw a paper bag within the partition. At that point they returned to the police station, obtained a search warrant, and then returned and recovered the bag and found that it contained a broken chloroform bottle. The initial investigation was legal, the police had the permission of the rental manager to make this search of the unrented part of the garage. *State v. Erho,* 77 Wash.2d 553, 562, 463 P.2d 779 (1970); *State v. Kearney,* 75 Wash.2d 168, 172, 449 P.2d 400 (1969).

Reversed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER and BRACHTENBACH, JJ., concur.

12 Wash.App. 748

STATE of Washington, Respondent,

v.

Charles KRECK, Appellant.

No. 1155–111.

Court of Appeals of Washington, Division 3.

Feb. 14, 1975.

As Amended March 3, 1975.

Rehearing Denied March 20, 1975.

Review Granted April 28, 1975.

Defendant was convicted in the Superior Court, Spokane County, William H. Williams, J., of second-degree murder. Defendant appealed. The Court of Appeals, Munson, J., held that whether or not a chemist's report showing the percentage of chloroform found in samples of blood taken from decedent's body was admissible under the Business Records Act, defendant's Sixth Amendment guarantee of right of confrontation was denied where the State failed to attempt to secure attendance of such chemist to testify at the trial. The violation of defendant's constitutional right was prejudicial.

Judgment reversed and case remanded for new trial.

**1. Criminal Law ⟜662(4)**

Whether or not chemist's report showing percentage of chloroform found in samples of blood taken from decedent's body was admissible under Business Records Act, defendant's Sixth Amendment guarantee of right of confrontation was denied, in murder prosecution, where State failed to attempt to secure attendance of such chemist to testify at the trial. U.S.C.A. Const. Amend. 6; RCWA 5.45.020, 10.52.060; CrR 4.6, 4.6(d); 28 U.S.C.A. § 1783.

**2. Criminal Law ⟜1168(2)**

In murder prosecution, denial of defendant's Sixth Amendment guarantee of right to confront chemist whose report showing percentage of chloroform in decedent's blood was admitted without chemist's testimony was prejudicial in view of the nature of the experimentation conducted by the chemist. U.S.C.A. Const.Amend. 6; RCWA 5.45.020, 10.52.060.

Victor J. Felice, Spokane, for appellant.

Donald C. Brockett, Pros. Atty., LeRoy C. Kinnie, Deputy Pros. Atty., Spokane, for respondent.

MUNSON, Judge.

Defendant appeals a conviction of second-degree murder, charged as occurring during the commission of the crime of assault in the second degree. We reverse, based on a violation of defendant's Sixth Amendment right to confrontation of witnesses.

On June 14, 1971, at 5:30 a.m., the defendant, who was then living separate and apart from his wife, Jocosa Kreck, called the Spokane Police Department from her home, informing them that his wife was in need of assistance. When the police arrived, they found him administering artificial respiration to her; she apparently was deceased at that time.

An autopsy failed to disclose the cause of death. Blood samples, drawn during the autopsy, were sent to the state toxicologist, Dr. Ted Loomis, at the University of Washington. The prosecuting attorney requested the samples be examined for the presence of chloroform, he having acquired information that the defendant purchased two bottles of chloroform shortly before his wife's death. The toxicologist's report disclosed a 26 milligram percentage of chloroform in the blood; the report did not state the cause of death.[1]

Dr. Loomis, called to testify about the laboratory report, stated it was made in the ordinary course of business and that he was the proper custodian of those records. He also testified the percentage of chloroform found in the blood samples constituted a lethal dose. Dr. Loomis did not conduct or participate in the laboratory analysis, nor did he formulate the laboratory report. That work was the product of Mr. Skinner, then a chemist in the State Department of Toxicology, supervised by Dr. Loomis. At the time of trial, Mr. Skinner was not an employee of the state; he was in Europe and not called as a witness. Dr. Loomis testified that Jocosa Kreck's death was caused by chloroform. This conclusion was based on the contents of the lab report. No other evidence established the cause of death.

Defendant contends a violation of his constitutional right of confrontation[2] occurred when the court allowed the state to rely solely upon the toxicologist's report to prove the cause of death, without requiring Mr. Skinner to testify as to the conduct of his examination and his conclusions. (*Cf.* CrR 6.13).

■ The state urges that the toxicologist's report was properly admitted, it being within the Business Records Act[3] exception to the hearsay rule in that Dr. Loomis testified he was the custodian of this record and that such records were entered in the regular course of business of the state toxicologist. Thus, the state contends the defendant is precluded from asserting a violation

1. STATE TOXICOLOGY LABORATORY
University of Washington School
of Medicine
Seattle, Washington 98105
TOXICOLOGY REPORT
Date: June 22, 1971
Sample Identification: Kreck, Jocosa
(A–123–71)
Date Sample Received: June 16, 1971
Sent by: R. E. Davis, M.D.
Deaconess Hospital, W. 800 Fifth Ave.,
Spokane, 99210
Sample material: Blood
(1) Test: Chloroform
Result: 26.0 mg%
(2) Test: Ethanol
Result: Negative
(3) Test:
Result:
Comments:
/s/ Ronald F. Skinner
for T.A. Loomis, M.D.
State Toxicologist
NOTE: Please *identify* and *label* all sample material clearly. Inquiries should refer to "Sample Identification" and "Date Sample Received."

2. United States Constitution, Amendment 6:
"*Right to Speedy Trial, Witnesses, etc.* In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

RCW 10.52.60 "Every person accused of crime shall have the right to meet the witnesses produced against him face to face: *Provided,* That whenever any witness whose deposition shall have been taken pursuant to law by a magistrate, in the presence of the defendant and his counsel, shall be absent, and cannot be found when required to testify upon any trial or hearing, so much of such deposition as the court shall deem admissible and competent shall be admitted and read as evidence in such case."

3. RCW 5.45.020: "A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

of his constitutional right of confrontation. Furthermore, it is contended that the admissibility of the report was discretionary with the trial court and no abuse of discretion occurred. *McDaniel v. United States,* 343 F.2d 785 (5th Cir.1965).

We need not decide whether the admission of the report was proper under the Business Records Act; the failure of the state in not attempting to secure the attendance of Mr. Skinner at the trial, considering the nature of the experimentation he conducted, denied defendant his constitutional right of confrontation.

As stated by Professor McCormick:

[T]he [United States] Supreme Court on more than one occasion has expressly rejected the idea that the hearsay rule and the right of confrontation are simply different ways of stating the same thing. C. McCormick, Law of Evidence § 252 (2d ed. E. Cleary 1972).[4]

The necessity for the distinction between hearsay exceptions and the confrontation clause is illustrated by the language of *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965):

There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.

At the time of trial, Mr. Skinner, an employee of a San Jose, California corporation, was working in Germany. While the right of confrontation is not absolute, CrR 4.6(d)[5], it is a basic trial right, intended to afford the defendant the opportunity of cross-examination, and may be abridged only in light of necessity as reflected by the availability of the declarant at the time of trial. In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the court, in defining "availability" in a criminal prosecution, stated:

In short, a witness is not "unavailable" ... unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly.

As in *Barber,* the state made no attempt to secure the attendance of Mr. Skinner at the trial, nor was any attempt made to take his deposition pursuant to CrR 4.6[6]. During oral argument, the state contended that

---

**4.** In *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970), the court stated:

"While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. *See Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."

**5.** "At the trial or upon any hearing, a part or all of a deposition so far as otherwise admissible under the rules of evidence may be used if it appears: that the witness is dead; or that the witness is unavailable, unless it appears that his unavailability was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness."

**6.** We believe *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), would have been decided differently if the 1964 amendment to 28 U.S.C. § 1783 (1958) had been in effect at the time of trial. *See also United States v. Lansky,* 496 F.2d 1063 (5th Cir.1974).

had Mr. Skinner been available the first day the case was set for trial, it would have been to no avail, since the matter was continued at the request of the defendant; and that the expense in both the transporting of Mr. Skinner from his present place of business and delay incurred by the continuance would have been a financial burden to the county. This contention is not persuasive; his testimony could have been preserved by deposition pursuant to the court rule. While *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), is often quoted for the position that the confrontation clause is intended "to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of personal examination and cross-examination ...," the discovery rules of that era were not as refined as they are today; a deposition given pursuant to CrR 4.6 contemplates, not only the defendant's presence, but cross-examination by this counsel,[7] thereby affording a defendant his right of confrontation.

We conclude that the state's failure to attempt to secure Mr. Skinner's attendance at the trial constituted a violation of defendant's Sixth Amendment guarantee. However, the question remains, was this violation prejudicial? We answer in the affirmative.

■ In *State v. Boehme,* 71 Wash.2d 621, 430 P.2d 527 (1967), a case prior to *Barber,* but subsequent to *Pointer,* the court stated:

Although we cannot, under the circumstances of this case, applaud or commend the state's failure to call Dr. Petty's assistant as a witness, we are not persuaded that the trial court committed reversible error in admitting Dr. Petty's testimony.

In part, the basis for the court's holding in *Boehme,* that the error, if any, was not prejudicial, was the automated nature of the experimentation conducted by the assistant of Dr. Petty. *Cf. State v. Finkley,* 6 Wash.App. 278, 492 P.2d 222 (1972).

We cannot conclude from the testimony here that the nature of the experimentation conducted by Mr. Skinner was of such an automated nature, conducted by such mechanical means, that cross-examination would not have been of assistance to the trier of fact in evaluating the testing procedure.

Dr. Loomis testified to the sequential steps to be taken in such analysis, but, not having participated in the actual performance, could not state from his own personal knowledge that the necessary steps were taken in proper sequence. We are unable to attribute to the conclusion found in the lab report that it is so divorced from the possibility of human error, or free from varying interpretation, that no practical purpose would be served by affording the defendant the right to confront and cross-examine the person who actually conducted the analysis. In the absence of Mr. Skinner's presence, an essential element, *i.e.,* the cause of death, was proven in part by admission of information contained on a form report. The defendant was incapable of questioning on cross-examination either the means utilized, or the validity of, the findings entered thereon. This omission constituted prejudicial error.

In light of our decision to remand this case, we deem it necessary to address ourselves to three other contentions of the appellant. First, he contends the state failed to prove the crime of second-degree assault as defined in RCW 9.11.020(2)[8]; at

---

7. 1 J. Stephen, History of the Criminal Law of England, Trial of Sir Walter Raleigh 333–337 (1883).

8. "Every person who, under circumstances not amounting to assault in the first degree—
"...

"(2) *With intent thereby* to enable or assist himself or any other person *to commit any crime,* shall administer to, or cause to be taken by, another, chloroform, ether, laudanum or any other intoxicating narcotic or anaesthetic; ..." (Italics ours.)

most the proof shows the defendant intended to commit only the crime of third-degree assault, a misdemeanor, hence he could not be guilty of felony-murder. By implication, defendant asserts, manslaughter not being an included crime within a charge of felony-murder, the defendant should have been acquitted.

The State takes the position it did prove an additional crime, burglary, either in the first or second degree, and that the administration of the chloroform by the defendant was in furtherance of that purpose. The trial court did not indicate which of the seven subsections of RCW 9.11.020 it found the defendant violated in finding him guilty of the crime of murder in the second degree. Thus, this court is incapable of passing upon this issue and declines to analyze the evidence. In view of the necessity for retrial, we urge the trial court to specify which section or sections of RCW 9.11.020, if any, it finds the defendant violated.

Secondly, the defendant challenges the testimony of Dr. Sol Levy as not complying with the Laws of 1973, 1st Ex.Sess., ch. 117, § 10, p. 801 [9] contending Dr. Levy neither examined the defendant nor was he able to testify that the defendant "appreciated" the nature and consequences of his conduct or his criminality. *Cf. State v. Jones,* 84 Wash.2d 823, 529 P.2d 1040 (1974). We need not respond to this assignment; that portion of the statute has been repealed.

**9.** "NEW SECTION. Sec. 10. At any proceeding held pursuant to this chapter:

"(1) Experts or professional persons who have reported pursuant to this chapter may be called as witnesses. Both the prosecution and the defendant may summon any other qualified expert or professional persons to testify, but no one who has not examined the defendant outside of court shall be competent to testify to an expert opinion with respect to the mental condition or responsibility of the defendant, as distinguished from the validity of the procedure followed by, or the general scientific propositions stated by, another witness.

"(2) Experts or professional persons who have examined the defendant and who have

Laws of 1974, 1st Ex.Sess., ch. 198, § 9, p. 791. Having granted defendant a new trial, that issue is moot.

Lastly, on review, we do not find the initial investigation leading to the issuance of a search warrant was contrary to law; nor do we find the defendant's other assignments of error have merit.

Judgment reversed and remanded for new trial.

McINTURFF, C.J., and GREEN, J., concur.

been called as witnesses concerning his mental condition shall be permitted to make a statement as to the nature of his examination, his diagnosis of the mental condition of the defendant at the time of the commission of the offense charged and his opinion as to the extent, if any, the defendant lacked capacity either (1) to know or appreciate the nature and consequence of such conduct; or (2) to know or appreciate the criminality of such conduct. He shall be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion and may be cross-examined as to any matter bearing on his competency or credibility or the validity of his diagnosis or opinion."